# 566·15

No. PD-0566-15

ORIGINAL

## IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

**INIUBONG EBONG,**
**Appellant/Petitioner**

VS.

**THE STATE OF TEXAS**
**Appellee/Respondent**

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUL 17 2015

Abel Acosta, Clerk

Petition in Cause No. 1374974 from the 351st Judicial District Court of Harris County, Texas, and the Fourteenth Court of Appeals, Texas, No. 14-14-00070-CR

## PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

JUL 21 2015

Abel Acosta, Clerk

Respectfully submitted,

**Iniubong Ebong**
Appellant/Petitioner, Pro se
TDCJ-CID#01908828
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351-8580

## INDEX

LIST OF AUTHORITIES............................................................................3

STATEMENT REGARDING ORAL ARGUMENT...................................5

STATEMENT OF THE CASE.................................................................5

STATEMENT OF PROCEDURAL HISTORY........................................5-6

QUESTION FOR REVIEW.....................................................................

1.  Whether the court of appeals erred by failing to find the evidence sufficient to support Petitioner's *Batson* challenge[1] violating Petitioner's substantive rights, his right to due process and a fair trial in violation of Art. 1, §§ 13 & 19 of the Texas Constitution, Art. 1.04, Texas Code of Criminal Procedure?..............................................................10-14

1.  Did the court of appeals below err by holding that the trial court's failure to instruct the jury on the lesser-included offense of injury to a child in violation of Petitioner's substantive rights and due process?.................................................................15-17

REASONS FOR REVIEW.......................................................................6

ARGUMENT & AUTHORITIES.............................................................7

PRAYER FOR RELIEF..........................................................................18

CERTIFICATE OF SERVICE................................................................19

APPENDIX A..................................................................14th COA Opinion

---

[1] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

# LIST OF AUTHORITIES

**CASE LAW:** **PAGE:**

*Almanza v. State*, 686 S.W.2d. 157 (Tex. Crim. App. 1985)..............................17

*Arline v. State*, 721 S.W.2d. 348, 351 (Tex. Crim. App. 1986)..........................17

*Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)..............................17

*Batson v. Kentucky*, 476 U.S. 79 (1986)........................................2, Fn. 1, 11

*Bignall v. State*, 887 S.W.2d. 21, 23 (Tex. Crim. App. 1994)............................16

*Campbell v. State*, 320 SW3d 338................................................................19

*Ford v. State*, 1 S.W.2d. 691, 693 (Tex. Crim. App. 1999)..............................12

*Gibson v. State*, 726 S.W.2d. 129, 133 (Tex. Crim. App. 1987)........................17

*Guzman v. State*, 84 S.W.3d. 242, 255 (Tex. Crim. App. 2002)........................12

*Hall v. State*, 225 S.W.3d. 524, 535 (Tex. Crim. App. 2007)............................15

*Keeton v. State*, 749 S.W.2d. 861, 866 (Tex. Crim. App. 1988)........................13

*Mitchell v. State*, 807 S.W.2d. 740, 742 (Tex. Crim. App. 1991)........................1

**OTHER:** **PAGE:**

:Equal Protection Clause of the Fifth Amendment to the United States Constitution.....10

No. PD-0566-15

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

INIUBONG EBONG,
Appellant/Petitioner

VS.

THE STATE OF TEXAS
Appellee/Respondent

Petition in Cause No.1374974 from the 351st Judicial District Court of Harris County, Texas, and the Fourteenth Court of Appeals, Texas, No. 14-14-00070-CR

PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW, Appellant-Petitioner Iniubong Ebong, (hereinafter "Petitioner"), who petitions the Court to review the decision affirming the judgment and sentence in cause number 1374974, out of the351st Judicial District Court of Harris County, Texas.

## STATEMENT REGARDING ORAL ARGUMENT

Petitioner is not an attorney and incarcerated. Oral argument would not be helpful to the Court under these circumstances.

## STATEMENT OF THE CASE

In November, 2010, after interrogation by homicide officers of the Houston Police Department, Appellant was arrested. On February 23, 2011, he was initially indicted for serious bodily injury to a child by use of a deadly weapon, his hands. (CR: 42) [2] The complainant was his five month old daughter, who had died. Appellant was subsequently indicted on January 24, 2013 and charged with felony murder with the underlying felony offense of injury to a child committed by either intentionally, knowingly, recklessly, or with criminal negligence causing bodily injury. (CR:10) Appellant proceeded to trial on December 2, 2013 and was convicted by the jury of felony murder as charged. The jury subsequently sentenced him to forty years confinement. (CR:382) The trial court certified Appellant's right to appeal. (CR:396) and Appellant filed his written notice of appeal on December 11, 2013. The clerk's file and the court reporter's record, as well as certain exhibits not originally forwarded, have been received by the Court. Appellant's brief was due on June 20, 2014. This proceeding followed.

## STATEMENT OF PROCEDURAL HISTORY

A panel of the Fourteenth Court of Appeals affirmed the judgment of the trial court in an unpublished decision rendered April 09, 2015. (*See Iniubong Ebong v. State,* No. 14-14-00070-CR). Petitioner filed one motion for an extension of time, which was granted by the Court allowing Petitioner up to and including, Friday, July 10, 2015, in which to file his *pro se* PDR.

---

[2] For purposes of these proceedings, Petitioner will refer to the Clerk's Record, as "CR," followed by the p[age referenced and the Reporter's Record as "RR," proceeded by the volume number and followed by the page referenced.

Additionally, as an incarcerated litigant, Petition filed a motion to suspend Rule 9(c), Tex. R. App. P., which the Court granted requiring him to only file one copy of the instant PDR.. Petitioner now files his petition for discretionary review pursuant to Rule 68 of the Texas Rules of Appellate Procedure by placing same in the prison mail box for the authorities to forward to the Court on Thursday, July 09, 2010, making it timely filed pursuant to both the State and Federal mail box rules.

## QUESTIONS PRESENTED FOR REVIEW

1. Whether the court of appeals erred by failing to find the evidence sufficient to support Petitioner's *Batson* challenge violating Petitioner's substantive rights, his right to due process and a fair trial in violation of Art. 1, §§ 13 & 19 of the Texas Constitution, Art. 1.04, Texas Code of Criminal Procedure?

2. Did the court of appeals below err by holding that the trial court's failure to instruct the jury on the lesser-included offense of injury to a child in violation of Petitioner's substantive rights and due process?

## REASONS FOR REVIEW

A. The Court of Appeals' decision conflicts with other Court of Appeals' decisions on the same issues. Tex. R. App. P. 66.3(a).

B. The Court of Appeals has erroneously decided important questions of state and federal law that have not been, but should be, settled by this Court. Tex. R. App. P. 66.3(b).

C. The Court of Appeals has decided important questions of state and federal law in conflict with applicable decisions of the Supreme Court of the United States. Tex. R. App. P. 66.3(c).

## ARGUMENT IN SUPPORT OF REASONS FOR REVIEW

### *Factual Background* [3]

Appellant and Laquisha Downs Ebong were the parents of five-month-old Indya Ebong. Appellant visited Laquisha, Indya, and Laquisha's five-year-old daughter on November 25, 2010, for Thanksgiving, and then stayed overnight. Laquisha fed Indya early in the morning on November 26, 2010, and left for work. Appellant stayed at Laquisha's apartment to watch Indya and Laquisha's older daughter. Appellant and Laquisha communicated by text messages throughout the day. Around 4:15 p.m., appellant sent Laquisha several text messages stating that something might be wrong with Indya and that Indya needed to go to the hospital. Laquisha returned home around 5:20 p.m. She saw appellant lying on her couch with Indya on his chest. Laquisha picked up Indya. Indya was not moving or breathing. Laquisha attempted to perform CPR on Indya for about 10 seconds by pressing on Indya's chest with two fingers and blowing into Indya's mouth. Indya remained unresponsive. Appellant drove Indya, Laquisha, and Laquisha's older daughter to the hospital. They arrived approximately five minutes later. Laquisha handed Indya to nurse Michelle Lee Dissinger upon arrival. Dissinger testified that Indya felt very stiff. Dissinger rushed Indya to the emergency room and called the medical team to begin life support measures. Indya's clothes were cut off; Dissinger saw that Indya's stomach was distended and showed several circular bruises. Indya was ashen. The baby was pronounced dead at 6:00p.m.

---

[3] As recited *verbatim* from the unpublished memorandum opinion in *Iniubong Ebong v. State*, No. 14-14-00070-CR.

The State indicted appellant for felony murder. The indictment alleged that Appellant argued at trial that the State could not prove his guilt beyond a reasonable doubt. He argued that the State's evidence only placed him with Indya on the day of her death and did not prove that his actions caused her death. The State played a recording of a police interrogation of appellant at trial. Appellant stated to police that he accidently dropped Indya onto the floor while he was holding her on November 26, 2010. Appellant stated that, after Indya fell to the floor, she cried. Appellant stated that he "patted" Indya to get her to stop crying and that he "accident[ly] . . . . patted her too hard." Dissinger testified that Indya's body temperature was 92.3 degrees Fahrenheit when she was brought to the hospital and that normal human body temperature is 98.6 degrees Fahrenheit. Dissinger opined that Indya had been dead for "a little while" when Laquisha first handed her Indya because Indya was stiff. Indya's stiffness indicated to Dissinger that rigor had set in. Dissinger explained that rigor mortis can set in between 30 minutes to four hours after death. Dissinger testified that the bruising pattern on Indya's stomach indicated that Indya's bruises were caused by someone's hand. Dissinger explained that the color of Indya's bruises indicated that they were recent. Dissinger opined that Indya had suffered her bruises while she was still alive.

Dissinger stated that she had seen cases of extreme damage to an individual's liver. She testified that extreme damage to an individual's liver is generally caused by a severe direct blow, by a motor vehicle accident, or by a fall from a height greater than 20 feet. She stated that extreme damage to an individual's liver could not be caused by a fall from someone's arms. Dr. Morna Gonsoulin has been an assistant medical examiner at the Harris County Institute of Forensic Science since 2000. She performed the autopsy on

8

Indya's body. Dr. Gonsoulin testified that, during the autopsy, she observed Indya's liver to be extensively damaged. It was torn with several tissue pieces wholly separated from the organ. Dr. Gonsoulin opined that Indya's liver damage was the result of significant blunt force trauma to the abdomen. Dr. Gonsoulin further opined that a great deal of force would have been required to cause Indya's liver damage. Dr. Gonsoulin stated that the force required to cause Indya's liver damage could have been produced by a car accident or by a very high fall from a balcony or bridge. Dr. Gonsoulin stated that the force required to cause Indya's liver damage could not have been produced by a fall from standing height. Dr. Gonsoulin also testified that Indya's right adrenal gland was distended and filled with blood; Indya's esophagus was traumatically dissected from its connective tissue attachment; Indya's pancreas and small intestine showed hemorrhages; Indya's lungs displayed bubbles of blood and small hemorrhages; and Indya's ribs were fractured in several places. Dr. Gonsoulin opined that the cause of Indya's death was blunt force injuries of the abdomen and chest and that the manner of Indya's death was homicide. Dr. Gonsoulin further opined that Indya's injuries were not consistent with a fall from the arms of a standing adult, even if Indya had landed on an object such as a toy. Dr. Gonsoulin stated that Indya's injuries were not consistent with an improper CPR attempt performed with two fingers. Dr. Gonsoulin stated that Indya's injuries were consistent with an individual punching Indya's abdomen with a fist or hand as hard as the individual could. Dr. Gonsoulin further opined that striking a five-month-old infant in her abdomen, or causing the infant's abdomen to strike a blunt or unknown object, is an act clearly dangerous to human life.

The jury also heard testimony from Dr. Sharon Derrick, who has been a forensic anthropologist with the Harris County Institute for Forensic Sciences since 2006. She performed a pediatric skeletal examination of Indya's body after the autopsy. Dr. Derrick observed 24 rib fractures on Indya's body. Dr. Derrick testified that the characteristics of the fractures indicated that the fractures had been made near the time of Indya's death. Dr. Derrick opined that the fractures were consistent with blunt force trauma and were not consistent with a fall from a height of five or six feet or a fall off a couch or a bed. The jury found appellant guilty and assessed his punishment at 40 years' imprisonment. Appellant timely appealed.

*Iniubong Ebong v. State*, No. 14-14-00070-CR.

## Question One Restated

1. Whether the court of appeals erred by failing to find the evidence sufficient to support Petitioner's *Batson* challenge[4] violating Petitioner's substantive rights, his right to due process and a fair trial in violation of Art. 1, §§ 13 & 19 of the Texas Constitution, Art. 1.04, Texas Code of Criminal Procedure?

## SUMMARY OF THE ARGUMENT

The trial court erred in denying Petitioner's request to dismiss the jury array based on the State's racially motivated peremptory challenge of an African-American veniremember. When asked by the court to explain this strike, the prosecutor was unable to provide a specific race neutral explanation and the record of the entire voir dire likewise failed to yield any explanation other than racial discrimination. The trial court's decision was clearly erroneous and violated both the Equal Protection Clause of the Fifth Amendment to the United States Constitution and the Tex. Code Crim. Proc. Art. 35.261.

---

[4] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

In addition, the trial court refused Petitioner's timely and specific request for an instruction on a lesser-included offense. The requested instruction was for injury to a child, a lesser-included offense of felony murder for which Petitioner was indicted. Petitioner presented sufficient evidence of this offense during his statements to police. Petitioner suffered actual harm as a result of the exclusion of this instruction from the jury charge. These errors warrant the reversal of Petitioner's conviction for murder

## ARGUMENTS AND AUTHORITIES

After jury selection, but before the jury was impaneled, counsel for Appellant objected that the prosecutor struck a veniremember based solely on race. (5 RR 344, 348) The excluded venire member, Juror No. 6, Ms. Cyprian, was African-American, as is Petitioner. (5 RR:348) This venire member was the only African-American remaining among prospective jurors subject to preemptory strikes which left no African-Americans on the jury selected. (5 RR:348) After some discussion, the Court, concluded that a prima facia case for a racially motivated strike had been made. The Court then initiated a *Batson* hearing by requesting the State to explain why Juror No. 6 had been excluded. *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L.Ed. 2d 69 (1986). (RR 5:350) The trial court ultimately denied the *Batson* motion. The *Batson* challenge was reurged the following morning in a motion to dismiss the array prior to the jury being impaneled. This challenge was joined with an objection under Tex. Code. Crim. Proc. 35.261, which prohibits preemptory strikes based on race. The court again denied this motion. A criminal defendant is able to demonstrate purposeful discrimination by relying solely on the facts surrounding jury selection in his case. *Batson, supra* 95. The defendant must demonstrate by a preponderance of the evidence that the prosecutor discriminated against a constitutionally protected class in exercising his peremptory challenges. *Guzman v. State*, 84

11

S.W.3d. 242, 255 (Tex. Crim. App. 2002). Once the opponent of the peremptory challenge has presented a *prima facia* case of racial discrimination, the burden of production shifts to the proponent of the strike to provide a race-neutral explanation for his challenge. If such an explanation is presented, the court must determine if discrimination has been proven. *Ford v. State*, 1 S.W.2d. 691, 693 (Tex. Crim. App. 1999). A review of the entire voir dire examination reflects that Ms. Cyprian indicated that she could consider the full range of punishment, (RR 5:198); could sentence to life in the appropriate case, (CR 5:241); and that the purpose of the criminal justice system should be punishment. (5 RR:246) With the panel as a whole, Cyprian felt that it was never acceptable to cause bodily injury to a child, (CR 5:227); and would not require the State to prove motive. (CR 5:217) She indicated she would not hold it against Petitioner if he chose not to testify. (5 RR:170) She believed it was appropriate to spank a child on the bottom, but she did not discipline her three-year-old stepson which she felt should be done by her husband. (5 RR 224) In justifying this challenge, the prosecutor initially expressed some concern that Cyprian shook her head when discussing bias against police officers, but Cyprian explained this misconception. (5 RR:238) The record provides no other support for this assertion. The prosecutor also relied mainly on the perception that Cyprian indicated that she would expect a neighbor to be a witness. A search of the entire voir dire examination conducted by the court and the attorneys fails to confirm any such statement by this veniremember. The court does indicate that Cyprian mentioned "someone in the house like you talked about" (5 RR:156). Such a response, if it occurred, was elicited by a generic question by the court as to possible witnesses, who might testify at trial. The prosecutor speculated that, based on this comment, Cyprian would expect independent witnesses to be presented in addition to other evidence. The prosecutor's peremptory challenge eliminated the only African-American who

12

could have served on the jury. The wrongful exclusion of even one such veniremember from the jury panel invalidated the entire process. The justification offered was not supported by Cyprian's actual comments. The State did not explore its alleged concerns. There was no individual examination of Cyprian in regard to her comments on neighbors or any requirement by her for additional witnesses. The State is required to articulate a clear, specific and race neutral reason for this suspect strike. Intuitive judgment or suspicion is not enough. *Keeton v. State*, 749 S.W.2d. 861, 866 (Tex. Crim. App. 1988). Instead the prosecutor provided only vague speculation without support in the record which even the court initially questioned. Deference to the court's decision does not inevitably preclude relief. The court's failure to dismiss the array was clearly erroneous and offends both the constitutional safeguards of the Equal Protection Clause and Art. 35.261.

The State articulated the following race-neutral reason for the strike:

**No. 6, to your voir dire, Judge, she – you were speaking about whom do you expect to be witnesses on a case, and she brought up: I expect a neighbor to be a witness. She agreed with bias, as you were speaking to her, as far as to police officers. When you were talking, she was shaking her head yes, but she didn't speak up later. And she also agrees with this is a big deal and a felony and a huge thing to the Defendant.. She brought up – you were talking about what kind of evidence and she brought up neighbors. And to me, that is – in a child abuse case, she would expect there to be independent witnesses. And in this case, all we have are he's in love with his baby. There aren't any other – there are no neighbors, there's no friends. There's nobody in that apartment other than the two of them. And that was her – she came up with that. That gives us a lot of concern that she is**

13

**going to expect someone to be able to say what happened in that apartment that day. And all we have is what he told the police later and the injuries to the baby. That's why I was concerned about the neighbors, because she came up with it like some sort of expectation. ...she talked about the discipline of the three-year-old and her stepson and it's not her job, it's her husband's job. A lot of this just gave us cause for concern. And the neighbor thing was the main thing. (5 RR 350-352).**

*State's Brief* at 6-7, (emphasis added).

### Opinion of the Fourteenth Court of Appeals in Regards to Question One

Petitioner avers initially that the court of appeals erred by misconstruing appellate counsel's *Batson* argument as relying solely on the "Equal Protection Clause of the Fifth Amendment to the [United States] Constitution" and the Texas Code of Criminal Procedure, Article 35.261. When in fact, Appellate counsel framed his arguments under *Batson*, as well and the court of appeals inappropriately used this, in part, as a basis for up-holding the trial court's denial of Petitioner's *Batson* challenge.

Further, after the trial court heard the State's "race-neutral reasoning" and Petitioner's trial attorney's response, the court of appeals erred by allowing the State to use subterfuge and pre-textual reasoning for exercising a peremptory strike against this potential juror, denying Petitioner his right to a fair and constitutional trial.

14

## Question Two Restated

1. Did the court of appeals below err by holding that the trial court's failure to instruct the jury on the lesser-included offense of injury to a child in violation of Petitioner's substantive rights and due process?

This question involves the trial court's refusal to allow the jury to consider an instruction on the lesser-included offense of injury to a child. The first step in this analysis, based solely on a pleadings approach, determines whether an offense is a lesser-included of the alleged offense and is solely a question of law. *Hall v. State*, 225 S.W.3d. 524, 535 (Tex. Crim. App. 2007). This analysis does not depend on the evidence presented at trial, but focuses on a comparison of the elements of the offense as alleged in the indictment to the elements of the requested lesser-included offense. This comparison must be capable of being performed before trial to provide proper due process notice to a defendant. *Hall, supra* 535-536. Tex. Code Crim. Proc., Art. 37.09(1), defines lesser-included offenses, and states that an offense is a lesser included offense if:

"(1) it is established by proof of the same or less than all the facts required establishing the commission of the offense charged."

The indictment in this case charged Petitioner in four paragraphs with felony murder by the commission of the underlying felony offense of injury to a child by bodily injury and while in the course of committing this offense alleged that Petitioner committed an act clearly dangerous to human life which caused the death of his child. The separate paragraphs alleged different manner and means of committing this same offense. (CR:10) The offense of injury to a child is clearly a lesser-included as defined by Art. 37.09(1). The second step in this analysis focuses on whether the evidence presented at trial supports the requested instruction. Stated simply, is there some evidence in the record to allow a rational jury to find the Petitioner guilty

of only the lesser-included offense. Anything more than a scintilla of evidence may be sufficient. *Bignall v. State*, 887 S.W.2d. 21, 23 (Tex. Crim. App. 1994). Although Petitioner did not testify on guilt or innocence, his videotaped statement to police was presented to the jury. (SX- 41; RR 7:193) A transcript of this interrogation was acknowledged by defense counsel to be accurate (7 RR:194) and was utilized by the jury during the presentation of the videotaped portion. (7 RR:195) During the course of this interrogation by homicide detectives, Petitioner finally acknowledged that he had dropped the child after he picked her up from the floor. According to Petitioner, the child landed on her stomach on the floor. (SX-41A:25). Petitioner maintained throughout the interrogation that the child slipped out of his hands accidently. But, Petitioner ultimately admitted that in order to stop the child from crying, he "patted her too hard" (SX-41A:36). After he dropped her, "she continued to cry and scream" and he "gave her a pop" (SX-41A:37). Although he claimed it was not intentional, he also acknowledged that he meant to hit her, but "not that hard" (SX-41A: 37-38). He was holding the child in his arms at the time (SX-41A:35). He hit the child in the abdomen with his hand (S.X-41A:40). Petitioner's statements were made in response to police questioning.

References are to the transcript of this interrogation (S.X-41A), presented sufficient evidence to support an instruction on the lesser-included of injury to a child. Petitioner's admissions confirmed two actions which could have caused bodily injury to his daughter. He first admitted he dropped the child when he was holding her at face level. He continued to claim this fall was accidental, but a jury could consider it reckless or negligent. There is further evidence from Petitioner that the child could have landed on a toy. The injuries resulting from this fall are unknown. Petitioner also acknowledged that he hit the child in the abdomen, variously describing his action as a pat, a pop, a strike or a blow. He also admitted that this

strike was harder than he intended. His statements present some evidence that he meant the action, but never intended the actual result. The credibility of the evidence presented by Petitioner and whether it conflicts with or controverts other evidence may not be considered in determining if the requested instruction should have been given. *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994). Resolving these possible questions is the responsibility of the jury who should be allowed to consider all the possibilities by the evidence presented. The raised lesser-included of injury to a child should have been allowed for the jury's review. Harm resulting from the denial of a required jury instruction is analyzed under *Almanza v. State*, 686 S.W.2d. 157 (Tex. Crim. App. 1985). Where a timely objection or request has been made, the record 12 will be reviewed to determine if the Petitioner has suffered some harm. Reversal is required if the error is calculated to injure the rights of the accused. *Almanza, supra* 171. The presence of any harm, regardless of degree is sufficient to require reversal. *Gibson v. State*, 726 S.W.2d. 129, 133 (Tex. Crim. App. 1987). Petitioner was harmed by this omission from the jury charge. The presence of any harm regardless of degree is sufficient to require reversal. *Arline v. State*, 721 S.W.2d. 348, 351 (Tex. Crim. App. 1986). When absence of a lesser-included instruction leaves the jury with only the option to convict of the charged offense or acquit, a finding of harm is essentially automatic. *Mitchell v. State*, 807 S.W.2d. 740, 742 (Tex. Crim. App. 1991). If the jury had elected a conviction for injury to a child by bodily injury, Petitioner would have faced a sentence ranging from a maximum of ten years to a maximum of two years in a state jail facility.

## PRAYER FOR RELIEF

Petitioner respectfully prays that this Honorable Court grant his Petition for Discretionary Review and reverse the decision of the Court of Appeals with instructions.

**SIGNED** on this the 9th day of July 2015.

Respectfully submitted,

_____

Tubong Ebong, Petitioner, Pro se
TDCJ-CID#01908828
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351-8580

18

## VERIFICATION

Petitioner herein declares under the penalty of perjury that he placed his Petition for Discretionary Review in the prison mail box on this the 9th day of July. 2015 with sufficient postage to be forwarded to this Court for filing. *See* Tex. Civil Practice & Remedies Code, §132.001- .003; 28 U.S.C. §1746; and *Campbell v. State*, 320 SW3d 338.

Iniubong Ebong, Petitioner, Pro se

## CERTIFICATE OF SERVICE

I, Iniubong Ebong, TDCJ-CID#01908828, Petitioner, *pro se*, herein certifies that a true and correct copy of the above and foregoing Petition for Discretionary Review was sent to the Denton County District Attorney, and The State Prosecuting Attorney, by placing same, in the prison mail box, first-class, postage paid, on this the 9th day of July 2015.

Iniubong Ebong, Petitioner, Pro se

19

# Appendix

# A

Unpublished opinion of the Fourteenth Court of Appeals in

*Ebong v. State*, No. 14-14-00070-CR

Affirmed and Memorandum Opinion filed April 9, 2015.



In The

## Fourteenth Court of Appeals

---

NO. 14-14-00070-CR

---

**INIUBONG EBONG, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 351st District Court
Harris County, Texas
Trial Court Cause No. 1374974**

---

## MEMORANDUM   OPINION

A jury convicted appellant Iniubong Ebong of felony murder[1] and assessed his punishment at 40 years' imprisonment. Appellant contends that the trial court committed reversible error by (1) overruling his *Batson* challenge[2] and; (2) failing to instruct the jury on the lesser-included offense of injury to a child.[3] We affirm.

---

[1] *See* Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2011).

[2] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] *See* Tex. Penal Code Ann. § 22.04(a) (Vernon Supp. 2014).

## BACKGROUND

Appellant and Laquisha Downs Ebong were the parents of five-month-old Indya Ebong. Appellant visited Laquisha, Indya, and Laquisha's five-year-old daughter on November 25, 2010, for Thanksgiving, and then stayed overnight.

Laquisha fed Indya early in the morning on November 26, 2010, and left for work. Appellant stayed at Laquisha's apartment to watch Indya and Laquisha's older daughter. Appellant and Laquisha communicated by text messages throughout the day. Around 4:15 p.m., appellant sent Laquisha several text messages stating that something might be wrong with Indya and that Indya needed to go to the hospital.

Laquisha returned home around 5:20 p.m. She saw appellant lying on her couch with Indya on his chest. Laquisha picked up Indya. Indya was not moving or breathing. Laquisha attempted to perform CPR on Indya for about 10 seconds by pressing on Indya's chest with two fingers and blowing into Indya's mouth. Indya remained unresponsive. Appellant drove Indya, Laquisha, and Laquisha's older daughter to the hospital. They arrived approximately five minutes later.

Laquisha handed Indya to nurse Michelle Lee Dissinger upon arrival. Dissinger testified that Indya felt very stiff. Dissinger rushed Indya to the emergency room and called the medical team to begin life support measures. Indya's clothes were cut off; Dissinger saw that Indya's stomach was distended and showed several circular bruises. Indya was ashen. The baby was pronounced dead at 6:00 p.m.

The State indicted appellant for felony murder. The indictment alleged that appellant committed the felony offense of injury to a child "by intentionally, knowingly, recklessly[,] and with criminal negligence causing bodily injury to

2

Indya Ebong," and "while in the course of and furtherance of the commission of and attempt to commit said offense did commit and attempt to commit an act clearly dangerous to human life." The State alleged, in four alternative pleading paragraphs, that appellant committed the offense of injury to a child and committed an act clearly dangerous to human life by (1) "striking [Indya] with his hand;" (2) "causing [Indya's] abdomen to strike a blunt object;" (3) "striking [Indya's] abdomen with an unknown object;" and (4) "causing [Indya's] abdomen to strike an unknown object."

Appellant argued at trial that the State could not prove his guilt beyond a reasonable doubt. He argued that the State's evidence only placed him with Indya on the day of her death and did not prove that his actions caused her death.

The State played a recording of a police interrogation of appellant at trial. Appellant stated to police that he accidently dropped Indya onto the floor while he was holding her on November 26, 2010. Appellant stated that, after Indya fell to the floor, she cried. Appellant stated that he "patted" Indya to get her to stop crying and that he "accident[ly] . . . . patted her too hard."

Dissinger testified that Indya's body temperature was 92.3 degrees Fahrenheit when she was brought to the hospital and that normal human body temperature is 98.6 degrees Fahrenheit. Dissinger opined that Indya had been dead for "a little while" when Laquisha first handed her Indya because Indya was stiff. Indya's stiffness indicated to Dissinger that rigor mortis had set in. Dissinger explained that rigor mortis can set in between 30 minutes to four hours after death.

Dissinger testified that the bruising pattern on Indya's stomach indicated that Indya's bruises were caused by someone's hand. Dissinger explained that the color of Indya's bruises indicated that they were recent. Dissinger opined that Indya had suffered her bruises while she was still alive.

3

Dissinger stated that she had seen cases of extreme damage to an individual's liver. She testified that extreme damage to an individual's liver is generally caused by a severe direct blow, by a motor vehicle accident, or by a fall from a height greater than 20 feet. She stated that extreme damage to an individual's liver could not be caused by a fall from someone's arms.

Dr. Morna Gonsoulin has been an assistant medical examiner at the Harris County Institute of Forensic Science since 2000. She performed the autopsy on Indya's body. Dr. Gonsoulin testified that, during the autopsy, she observed Indya's liver to be extensively damaged. It was torn with several tissue pieces wholly separated from the organ. Dr. Gonsoulin opined that Indya's liver damage was the result of significant blunt force trauma to the abdomen. Dr. Gonsoulin further opined that a great deal of force would have been required to cause Indya's liver damage. Dr. Gonsoulin stated that the force required to cause Indya's liver damage could have been produced by a car accident or by a very high fall from a balcony or bridge. Dr. Gonsoulin stated that the force required to cause Indya's liver damage could not have been produced by a fall from standing height.

Dr. Gonsoulin also testified that Indya's right adrenal gland was distended and filled with blood; Indya's esophagus was traumatically dissected from its connective tissue attachment; Indya's pancreas and small intestine showed hemorrhages; Indya's lungs displayed bubbles of blood and small hemorrhages; and Indya's ribs were fractured in several places. Dr. Gonsoulin opined that the cause of Indya's death was blunt force injuries of the abdomen and chest and that the manner of Indya's death was homicide. Dr. Gonsoulin further opined that Indya's injuries were not consistent with a fall from the arms of a standing adult, even if Indya had landed on an object such as a toy. Dr. Gonsoulin stated that Indya's injuries were not consistent with an improper CPR attempt performed with

4

two fingers. Dr. Gonsoulin stated that Indya's injuries were consistent with an individual punching Indya's abdomen with a fist or hand as hard as the individual could. Dr. Gonsoulin further opined that striking a five-month-old infant in her abdomen, or causing the infant's abdomen to strike a blunt or unknown object, is an act clearly dangerous to human life.

The jury also heard testimony from Dr. Sharon Derrick, who has been a forensic anthropologist with the Harris County Institute for Forensic Sciences since 2006. She performed a pediatric skeletal examination of Indya's body after the autopsy. Dr. Derrick observed 24 rib fractures on Indya's body. Dr. Derrick testified that the characteristics of the fractures indicated that the fractures had been made near the time of Indya's death. Dr. Derrick opined that the fractures were consistent with blunt force trauma and were not consistent with a fall from a height of five or six feet or a fall off a couch or a bed.

The jury found appellant guilty and assessed his punishment at 40 years' imprisonment. Appellant timely appealed.

## ANALYSIS

### I. *Batson* Challenge

Appellant is African American. Before the trial court impanelled the jury, appellant made a *Batson* challenge to the State's use of a peremptory strike on venire member number six, who was the only African-American venire member remaining on the venire after several dozen members were excused for cause or by agreement of the parties. *See Batson v. Kentucky*, 476 U.S. 79 (1986). The trial court denied appellant's challenge. In his first issue, appellant contends that the trial court erred by failing to determine that the State struck venire member number six on the basis of race in violation of "the Equal Protection Clause of the Fifth

5

Amendment to the [United States] Constitution" and Texas Code of Criminal Procedure article 35.261. We analyze appellant's issue under the framework established in *Batson*.[4]

## A. Standard of Review and Applicable Law

In *Batson*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution forbids the State from exercising its peremptory strikes based solely on the race of a potential juror. *Batson*, 476 U.S. at 89; *Nieto v. State*, 365 S.W.3d 673, 675 (Tex. Crim. App. 2012); *Jones v. State*, 431 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see* U.S. Const. amend. XIV, § 1. Even a single impermissible strike for a racially motivated reason invalidates the jury-selection process and requires a new trial. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *Jones*, 431 S.W.3d at 154.

A *Batson* challenge consists of three steps. *Nieto*, 365 S.W.3d at 675. First, the defendant must make a *prima facie* showing of racial discrimination in the State's use of a peremptory strike. *Id.* If the defendant does so, then the State must articulate a race-neutral explanation for its strike. *Id.* The race-neutral explanation does not have to be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). Rather, "the issue is the facial validity of the [State]'s explanation. Unless a discriminatory intent is inherent in the [State]'s explanation,

---

[4] The Texas Legislature adopted the *Batson* analysis in Texas Code of Criminal Procedure article 35.261. *See* Tex. Code of Crim. Proc. Ann. art. 35.261 (Vernon 2006); *Nieto v. State*, 365 S.W.3d 673, 676 n.2 (Tex. Crim. App. 2012). The United States Supreme Court decided *Batson* on the basis of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. *See Batson*, 476 U.S. at 79; *Jones v. State*, 431 S.W.3d 149, 154 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also* U.S. Const. amend. XIV, § 1. Appellant makes a single reference to the Fifth Amendment, but he cites no authority and offers no explanation for this reference. To the extent appellant asserts a Fifth Amendment argument, we find appellant has waived the complaint by failing to brief it. *See* Tex. R. App. P. 38.1(i).

6

the reason offered will be deemed race neutral." *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion)). Third, the trial court must determine if the defendant has proved purposeful discrimination by a preponderance of the evidence. *Blackman v. State*, 414 S.W.3d 757, 764 (Tex. Crim. App. 2013); *Nieto*, 365 S.W.3d at 675.

We review a trial court's ruling on a *Batson* challenge for clear error focusing on the genuineness of the asserted non-racial motive for the strike, rather than the reasonableness. *Nieto*, 365 S.W.3d at 676. We should consider the entire voir dire record in assessing the trial court's determination, and we are not limited to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record. *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). We give great deference to the trial court's ruling on the issue of discriminatory intent because a finding regarding intentional discrimination largely turns on the trial court's evaluation of the demeanor and credibility of the attorney who exercised the peremptory challenge. *Hernandez v. New York*, 500 U.S. 352, 364-65 (1991) (plurality opinion); *Alexander v. State*, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993). Additionally, race-neutral reasons for peremptory challenges often invoke a juror's demeanor, making the trial court's firsthand observations of even greater importance. *Snyder*, 552 U.S. at 477. We will not disturb the trial court's ruling unless we are left with a definite and firm conviction that a mistake has been committed. *Hernandez*, 500 U.S. at 369.

## B. Discussion

The parties do not dispute that appellant made a *prima facie* showing based on the State's use of a peremptory strike on venire member number six. The trial court questioned the State on its motive for exercising the strike in the following

exchange:

THE COURT: Why did you strike —

[THE STATE'S COUNSEL 1]: No. 6. Sorry. No. 6, to your voir dire, Judge, she — you were speaking about who do you expect to be witnesses on a case, and she brought up: I expect a neighbor to be a witness. She agreed with bias, as you were speaking to her, as far as to police officers. When you were talking, she was shaking her head yes, but she didn't speak up later. And she also agrees with this is a big deal and a felony and a huge thing to the defendant, so . . .

[APPELLANT'S COUNSEL 1]: Judge, may I speak?

THE COURT: Sure. Okay.

[APPELLANT'S COUNSEL 1]: If I recall, your question was: Who could testify, not who's required to testify in that case. And she did say neighbor or other relatives who may have been present at the scene.

THE COURT: I said the second part, but she did say the first part.

[THE STATE'S COUNSEL 1]: And no other juror made the statements that she made like Juror 6 did.

THE COURT: Is that all you've got? That doesn't sound like —

[THE STATE'S COUNSEL 2]: Can I explain?

THE COURT: Sure.

[THE STATE'S COUNSEL 2]: Okay. She brought up — you were talking about what kind of evidence and she brought up neighbors. And to me, that is — in a child abuse case, she would expect there to be independent witnesses. And in this case, all we have are he's in love with his baby. There aren't any other — there are no neighbors, there's no friends. There's nobody in that apartment other than the two of them. And that was her — she came up with that. That gives us a lot of concern that she is going to expect someone to be able to say what happened in that apartment that day. And all we have is what he told the police later and the injuries to the baby. That's why I

8

was concerned about the neighbors, because she came up with it like some sort of expectation.

THE COURT: I mean, the lady in the back that came up with the EMS and first responders and stuff like that —

[THE STATE'S COUNSEL 2]: I don't know which one that is.

THE COURT: I don't know which one it was, either.

[THE STATE'S COUNSEL 2]: So, I mean, a lot of these people are struck for cause at this point in time.

THE COURT: She was the social worker.

[THE STATE'S COUNSEL 1]: We struck her.

[THE STATE'S COUNSEL 2]: Well, we did strike her, because she was the one that started going off on the whole bias thing and kind of got a little whacky, but I don't remember that. I was —

[THE STATE'S COUNSEL 1]: That was —

[THE STATE'S COUNSEL 2]: She was a nurse and later she volunteered for social working.

THE COURT: Well, I know there were others struck —

[THE STATE'S COUNSEL 2]: Yes, we struck both of them, so —

[APPELLANT'S COUNSEL 2]: Your Honor, if I may —

[THE STATE'S COUNSEL 2]: And it was a race-neutral reason. That was it.

[APPELLANT'S COUNSEL 2]: If I may. The prosecutor then followed up and asked CSI questions or what else anybody else would require. Juror No. 6 got silent. I mean, she in no way said that she would require neighbors or require any other testimony. My interactions with her, your interactions with her, the prosecutor's interactions with her, she has been probably the most neutral, fair, and impartial person I've seen. She's had plenty an opportunity to

disqualify herself and she's been —

[THE STATE'S COUNSEL 2]: You talked to her a lot about the three-year-old and that she doesn't discipline and — you know, I just — she talked about the discipline of the three-year-old and her stepson and it's not her job, it's her husband's job. A lot of this just gave us cause for concern. And the neighbor thing was the main thing.

THE COURT: Motion denied.

Appellant argues that the State offered two explanations for its peremptory strike of venire member number six that are not supported by the record.

First, the State expressed concern that venire member number six was biased against police officers because she shook her head affirmatively when the trial court questioned her regarding bias. Appellant argues that the record shows that venire member number six explained why she shook her head and thus cleared any misconception that she was biased against police officers.

We have reviewed the voir dire record. The record does not contradict the State's explanation for exercising its peremptory strike on venire member number six because she shook her head in response to the trial court's questioning regarding bias against police officers. Appellant cites to a section of the voir dire record in which venire member number six explained why she shook her head in response to the State's question about whether she could convict appellant if he were proven guilty. This section of the voir dire record is not the same section as the trial court's questioning regarding bias against police officers. The record shows that the trial court explained bias and asked row by row whether any venire member was biased against police officers. Venire member number six did not state on the record whether she was biased, and the record does not indicate whether she shook her head. Appellant's counsel did not contest the State's

10

assertion that venire member number six shook her head affirmatively when arguing his *Batson* challenge to the trial court.

The trial court was in the best position to determine whether the State's explanation for its strike based on venire member number six's asserted affirmative head shake was genuine. *See United States v. Williams*, 264 F.3d 561, 572 (5th Cir. 2001) (*Batson* inquiry is "quintessentially a question of fact which turns heavily on demeanor and other issues not discernable from a cold record, such that deference to the trial court is highly warranted."). On this record, we defer to the trial court's determination that the State offered a genuine, race-neutral explanation for its strike based on venire member number six's asserted affirmative head shake during questioning regarding bias against police officers. *See Nieto*, 365 S.W.3d at 680 ("The State's description of [venire member's] demeanor is considered proved on the record because [a]ppellant's counsel did not rebut the observation."); *Watkins*, 245 S.W.3d at 447 ("Whether the opponent satisfies his burden of persuasion to show that the proponent's facially race-neutral explanation for his strike is pre-textual, not genuine, is a question of fact for the trial court to resolve in the first instance.").

Second, the State explained that its strike was motivated by its concern that venire member number six expected testimony from a neighbor at the guilt-innocence phase of trial. Appellant asserts: "A search of the entire voir dire examination conducted by the court and the attorneys fails to confirm any such statement by this [venire member]."

We have reviewed the record. The record does not clearly indicate that venire member number six stated that she expected a neighbor to testify. Instead, venire member responses are recorded on the record without any indication of which member gave the response.

The trial court asked the venire members who they thought might testify during the guilt-innocence phase of trial. The record shows the following response: "VENIREPERSON: I mean, I would probably think maybe a neighbor could have witnessed a crime." Twenty pages later, the record shows this statement by the trial court: "And, again, we talked about a circumstance where the only witness to whatever happened happened, if it did happen, is the defendant. Because, you know, there's not always somebody in the house, [venire member number six],[5] like you talked about, or a neighbor." Appellant's counsel stated, when he argued his *Batson* challenge after completion of voir dire: "If I recall, [the trial court's] question was: Who could testify, not who's required to testify in that case. And [venire member number six] did say neighbor or other relatives who may have been present at the scene."

The trial court record is unclear as to what, if anything, venire member number six stated regarding her expectation that a neighbor might testify at trial. At a minimum, the record shows that appellant's counsel agreed that venire member number six stated that a neighbor or other relative could testify at trial. We defer to the trial court's determination that the State offered a genuine, race-neutral motive for its strike based on venire member number six's alleged testimony regarding her expectation that a neighbor might testify at trial because the trial court's determination is not clearly erroneous. *See Nieto*, 365 S.W.3d at 680; *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004) (the *Batson* clearly-erroneous standard is a "highly deferential standard because the trial court is in the best position to determine whether a prosecutor's facially race-neutral explanation for a peremptory strike is genuinely race-neutral.").

---

[5] The trial court referred to venire member number six by name at this point.

Appellant does not challenge the State's final argument that it struck venire member number six based on her statement during voir dire that her husband disciplined their three-year-old stepson. Appellant has the ultimate burden of persuasion to establish by a preponderance of the evidence that the State's peremptory strike was the product of purposeful discrimination. *See Watkins*, 245 S.W.3d at 447. We determine that appellant has not established that the State's ostensibly race-neutral motive for its strike based on venire member number six's statement regarding the discipline of her stepson was a pretext for race-based discrimination. *See id.*

Finally, appellant asserts that the State did not explore its alleged concerns through specific questions addressed to venire member number six. While specific questions may have reinforced the trial court's finding of a genuine race-neutral motive for the State's strike, the strike is not proved to be racially motivated in the absence of such questions. *See Nieto*, 365 S.W.3d at 678 (upholding trial court's *Batson* determination despite the lack of individual questioning where the State explained that it struck a venire member because that member shared the same last name as a known criminal family and the venire member allegedly glared at the prosecutor).

We hold that the trial court did not clearly err in finding that the State's explanations for exercising its peremptory strike on venire member number six were genuine and, accordingly, concluding that appellant failed to meet his burden to establish by a preponderance of the evidence that the State purposefully discriminated on the basis of race when exercising a peremptory strike. *See Blackman*, 414 S.W.3d at 771. We overrule appellant's first issue.

## II. Jury Instruction

In his second issue, appellant contends that the trial court erred by failing to

13

instruct the jury on the lesser-included offense of injury to a child.

## A. Standard of Review and Applicable Law

We apply a two-step test to determine whether appellant was entitled to an instruction on a lesser-included offense. *See Cavazos v. State*, 382 S.W.3d 377, 382-83 (Tex. Crim. App. 2012). The first step is a question of law, in which we compare the elements alleged in the indictment with the elements of the lesser offense to determine "if the proof necessary to establish the charged offense also includes the lesser offense." *Id.* at 382. Texas Code of Criminal Procedure article 37.09, entitled "Lesser included offense," states that an offense is a lesser-included offense if:

> (1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;
>
> (2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;
>
> (3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or
>
> (4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).

The second step requires us to determine if there is some evidence in the record that would permit a rational jury to find that, if the appellant is guilty, he is guilty only of the lesser offense. *Cavazos*, 382 S.W.3d at 383; *see also Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) ("[T]he evidence must establish the lesser-included offense as a valid, rational alternative to the charged offense.") (internal quotations omitted). A defendant is entitled to an instruction on a lesser-included offense "if some evidence from any source raises a fact issue

14

on whether he is guilty of only the lesser [offense], regardless of whether the evidence is weak, impeached, or contradicted." *Cavazos*, 382 S.W.3d at 383. "Although this threshold showing is low, it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense, but rather, there must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011) (internal quotations omitted). The standard may be satisfied "if some evidence refutes or negates other evidence establishing the greater offense or if the evidence presented is subject to different interpretations." *Id.*; *see Hall*, 225 S.W.3d at 536 ("[A]nything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge.").

## B. Discussion

The parties do not dispute the first step of the test to determine whether appellant was entitled to an instruction on the offense of injury to a child as a lesser-included offense of felony murder. Therefore, we assume without deciding that the first step was satisfied and proceed to the second step. *See Sweed*, 351 S.W.3d at 68 & n.4 (assuming without deciding that the first step was satisfied because the State did not assert failure to satisfy the first step as a ground for appellate review); *cf. Contreras v. State*, 312 S.W.3d 566, 584 (Tex. Crim. App. 2010) ("The offense of 'injury to a child' can qualify as an underlying felony in a felony murder prosecution."); *Martin v. State*, 246 S.W.3d 246, 265 (Tex. App.—Houston [14th Dist.] 2007, no pet.) ("Injury to a child is a lesser included offense of capital murder.").

A person commits a felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, he commits or attempts to commit an act clearly dangerous

15

to human life that causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2011). A person commits the felony offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence by act or omission causes serious bodily injury or injury to a child. *Id.* § 22.04(a) (Vernon Supp. 2014); *see id.* § 22.04(e), (f), (g) (Vernon Supp. 2014) (the offense of injury to a child is a felony).

The second step requires us to consider whether there is any affirmative evidence from which a rational jury could have found that, if appellant was guilty, he was guilty only of the lesser-included offense of injury to a child, and not the greater offense of felony murder. *See Cavazos*, 382 S.W.3d at 383; *Hall*, 225 S.W.3d at 536. Appellant argues that his statements to police provide such evidence.

At the guilt-innocence phase of trial, the State played a recording, made on November 27, 2010, of a police interrogation of appellant. Appellant stated to police during his interrogation that he accidently dropped Indya onto the floor while he was holding her on November 26, 2010. Appellant stated that he raised Indya up to the height of his chin, and that Indya slipped from his grip accidently. Appellant stated that Indya may have fallen onto a hard plastic toy lying on the carpet. The interviewing detective told appellant that Indya's injuries were not consistent with a fall from an adult's arms. He encouraged appellant to be more forthcoming. Appellant stated in response that Indya cried after she fell to the floor. Appellant stated that he "patted her butt" and "shook her a little bit." He explained that he was trying to get Indya to stop crying. Appellant stated: "It was an accident . . . . I patted her too hard . . . . I ended up spanking her accidently . . . . On the abdomen. Accidently. Just that one time."

16

Appellant argues that his interview statements provide sufficient evidence to warrant a jury instruction on the lesser-included offense of injury to a child. Appellant stated during his interview that Indya fell out of his hands accidently. He argues that, although he claimed this fall was an accident, a jury could have considered the fall to be the result of appellant's reckless or negligent conduct and, therefore, he was entitled to a jury instruction on the offense of injury to a child. Appellant does not argue on appeal that the fall was an accident, as he stated in his interview.

We reject appellant's argument. The record does not provide evidence that Indya's fall was the result of appellant's reckless or negligent conduct; the record provides evidence only that Indya's fall was the result of an accident. If a jury attributed Indya's injuries to an accidental fall, then the jury would find appellant to be not guilty of both felony murder and injury to a child. *See* Tex. Penal Code Ann. § 19.03(b)(3); *id.* § 22.04(a) (a person commits the offense of injury to a child if he intentionally, knowingly, recklessly, or with criminal negligence causes serious bodily injury or injury to a child); *see also Williams v. State*, 294 S.W.3d 674, 681 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("Appellant's testimony that she did not commit any offense cannot support a lesser-included offense instruction . . . . Appellant's evidence, if believed by the jurors, would have supported only an acquittal."). Therefore, appellant's statement is not germane to the lesser-included offense of injury to a child because, if believed, it tends to show that appellant is innocent of any offense. *See Sweed*, 351 S.W.3d at 68; *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994) ("If a defendant either presents evidence that he committed no offense or presents no evidence, and there is no evidence otherwise showing he is guilty only of a lesser included offense, then a charge on a lesser included offense is not required.") (emphasis removed).

17

Even if appellant's statement could be interpreted to provide more than a scintilla of evidence of his reckless or negligent conduct causing Indya's fall, the evidence would not permit a rational jury to find appellant guilty of only the lesser-included offense of injury to a child, and not the greater offense of felony murder. Felony murder does not require a culpable mental state. *See* Tex. Penal Code Ann. § 19.03(b)(3); *Johnson v. State*, 4 S.W.3d 254, 255 (Tex. Crim. App. 1999) ("The felony murder rule dispenses with the necessity of proving mens rea accompanying the homicide itself; the underlying felony supplies the culpable mental state."). Evidence of appellant's reckless or negligent conduct supports his felony murder conviction. *See Contreras*, 312 S.W.3d at 583-85 (upholding guilty verdict for felony murder based on the underlying felony offense of injury to a child because the jury was unanimous at least as to defendant's culpable mental state of criminal negligence for the offense of injury to a child).[6]

We hold that the evidence is insufficient to permit a rational jury to find that appellant is guilty only of the lesser-included offense of injury to a child, and not the greater offense of felony murder. Therefore, the trial court did not err in denying appellant's request for a jury instruction on the offense of injury to a child. *See Cavazos*, 382 S.W.3d at 382-383. We overrule appellant's second issue.

---

[6] Appellant also argues that his interview statements provide evidence that he "meant [his] actions [of striking Indya], but never intended the actual result." Appellant's interview statements regarding his striking of Indya do not support an instruction on the lesser-included offense of injury to a child because, regardless of whether appellant's statements tend to show that his actions were intentional, knowing, reckless, or negligent, his statements support his conviction for the greater offense of felony murder. *See* Tex. Penal Code Ann. §§ 19.03(b)(3), 22.04(a); *Contreras*, 312 S.W.3d at 583-85; *Johnson*, 4 S.W.3d at 255.

18

## CONCLUSION

Having overruled appellant's two issues, we affirm the trial court's judgment.

/s/    William J. Boyce
       Justice

Panel consists of Chief Justice Frost and Justices Boyce and McCally.

Do Not Publish — Tex. R. App. P. 47.2(b).

Inuibong Ebong, #01908828
Polunsky Unit
3872 FM 350 South
Livingston, Texas 77351



FOREVER A503507

Mr. Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711-2308



FOREVER A503507 15230853



FOREVER A503507 1523

USPS® FIRST-CLASS MAIL®

U.S. POSTAGE
$1.86
77072
07/13/15 FCM LG ENV
06 2S00 Date of sale
0833595 9 SSK
A503507 132 1 1657

0 lb. 4.50



SHIP
TO:

AUSTIN TX 78711

ZIP

(420) 78711