

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0230-11

**CHARLES FRANKIE NIETO, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### SMITH COUNTY

 **MEYERS, J.,** delivered the opinion of the Court in which **KELLER, P.J.,** and **PRICE, WOMACK, KEASLER, HERVEY,** and **COCHRAN, JJ.,** joined. **JOHNSON, J.,** dissented. **ALCALA, J.,** did not participate.

## O P I N I O N

Appellant, Charles Nieto, appealed the trial court's denial of his *Batson* motion, which he filed after all of the black venire members in the strike zone were struck by the State. The First Court of Appeals held that the trial court clearly erred in failing to find that the State's proffered race-neutral reasons were a pretext for racial discrimination. *Nieto v. State*, No. 01-09-00226-CR, 2010 Tex. App. LEXIS 9953 (Tex. App.—Houston

[1st Dist.] Dec. 16, 2010, pet. granted) (mem. op., not designated for publication). The State petitioned, asking this Court to affirm the conviction and sentence of the trial court. The record here does not demonstrate that the trial court clearly erred by finding that the reasons proffered by the State were facially sufficient to show race-neutral reasons for the strike. Therefore, we will reverse the judgment and remand the case to the court of appeals.

## PROCEDURAL BACKGROUND

Appellant was convicted of murder in 1995. In 1997, the Twelfth Court of Appeals affirmed the conviction, but criticized the adequacy of appellate counsel's briefing.[1] Appellant subsequently filed an application for a writ of habeas corpus, alleging ineffective assistance of counsel. We remanded the application to the trial court for a hearing and then granted permission for Appellant to appeal the conviction within thirty days of that order. *Ex parte Nieto*, No. AP-76,090, 2009 Tex. Crim. App. Unpub. LEXIS 94, at *1-2 (Tex. Crim. App. Feb. 4, 2009).

Appellant's new counsel timely filed a notice of appeal, alleging that the trial court erred in denying his *Batson* challenge because the State's proffered reasons for exercising its strikes were pretexts for racial discrimination. *Nieto*, 2010 Tex. App. LEXIS 9953, at *4. The First Court of Appeals agreed, determining that the State's reasons for its strikes were pretextual. Accordingly, it reversed the conviction and remanded to the trial court.

---

[1] The case was eventually transferred to the First Court of Appeals by the Texas Supreme Court pursuant to its docket equalization efforts. *Nieto*, 2010 Tex. App. LEXIS 9953, at *1 n.1.

*Id.* at \*18.  The State filed a petition for discretionary review, raising the following grounds:

> 1) Does the fact that a venireperson shares the same last name as a known criminal family constitute a racially neutral reason for a prosecutor to exercise a peremptory strike?
>
> 2) Does the fact that a venireperson is noted to be "glaring" at a prosecutor during voir dire constitute a racially neutral reason for a peremptory strike?
>
> 3) Did the 1st Court of Appeals fail to consider the "entire record of voir dire" where it did not review the record regarding the prosecutor's racially neutral reasons for striking four other minority venire persons.

## STANDARD OF REVIEW

In *Batson v. Kentucky*, the United States Supreme Court held that the Equal Protection Clause forbids a prosecutor from exercising peremptory strikes based solely on the race of the potential juror. 476 U.S. 79, 89 (1986). The party exercising a peremptory strike typically does not have to explain its rationale for the strike, unless the strike is challenged under *Batson*. *Lewis v. State*, 911 S.W.2d 1, 4 (Tex. Crim. App. 1995); *see* TEX. CODE CRIM. PROC. art. 35.14.

The Supreme Court outlined a three-step process for evaluating *Batson* claims, which encourages prompt rulings on objections to peremptory challenges and reduces disruptions in the jury-selection process. *Hernandez v. New York*, 500 U.S. 352, 358 (1991). First, the defendant must make a *prima facie* showing of racial discrimination. *Batson*, 476 U.S. at 96-97. If the defendant makes the requisite showing, the burden shifts to the prosecutor in the second step, requiring him to articulate a race-neutral explanation

for the strike. *Id.* at 97-98. Finally, the trial court must determine if the defendant has proved purposeful discrimination. *Id.* at 98.[2]

The trial court's ruling in the third step must be sustained unless it is clearly erroneous. *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). The clearly erroneous standard is highly deferential because the trial court is in the best position to determine if the prosecutor's explanation is genuinely race neutral. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). The trial court must focus on the genuineness of the asserted non-racial motive, rather than the reasonableness. *Purkett v. Elem*, 514 U.S. 765, 769 (1995). We defer to the trial court's ruling in the absence of exceptional circumstances. *Hernandez*, 500 U.S. at 366.

An appellate court should consider the entire record of the voir dire and need not limit itself to the specific arguments brought forth to the trial court by the parties. *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). A reviewing court may not substitute its judgment for the trial court's in deciding that the prosecutor's explanation was a pretext. *See Gibson*, 144 S.W.3d at 534. Just like the trial court, the reviewing court must focus on the genuineness, rather than the reasonableness, of the asserted non-racial motive. *Id.* at 533-34.

The Supreme Court addressed the relevance of the defendant's race in *Powers v. Ohio*, 499 U.S. 400 (1991). The Court eliminated the requirement that the defendant and

---

[2] In 1987, the Texas Legislature adopted the *Batson* analysis in Article 35.261 of the Code of Criminal Procedure.

struck panelists must be of the same race, but indicated that racial differences may be a relevant factor in other cases. *Id.* at 402, 416; *see State v. Oliver*, 808 S.W.2d 492, 495-96 (Tex. Crim. App. 1991) (interpreting TEX. CODE CRIM. PROC. art. 35.261 to allow a defendant to challenge strikes of prospective jurors who are of racial groups different from the defendant).

## THE *BATSON* CHALLENGE

Sixty people were summoned for jury selection. The trial court conducted a voir dire of the panel in the morning session. The State's lead prosecutor, District Attorney Jack Skeen, Jr., could not attend that session, so David Dobbs, the chief felony prosecutor for Smith County, attended in order to observe the jury panel. Dobbs did not participate in the afternoon session or the remainder of the trial.

After the voir dire by both the State and Appellant, the trial court granted six strikes for cause. Thirty-one jurors remained in the strike zone, and each side had ten peremptory strikes available. The State struck all five black prospective jurors, leaving one Hispanic male on the jury (Appellant is a Hispanic male). Appellant's counsel raised a *Batson* challenge to the State's peremptory strikes.

The trial court followed the three-step process outlined in *Batson*. First, the court found that Appellant made a *prima facie* showing of race discrimination based on the number of peremptory strikes against minority members, the composition of the panel before and after the exercise of the strikes, and the Appellant's race.

Next, the court required that the State show sufficient race-neutral reasons for the exercise of the peremptory strikes. Skeen testified in narrative, describing the State's reasoning for each strike against a black venireperson. The focus of this appeal is on the strike of Gregory Mauldin, a black male. However, other black venirepersons were struck because of criminal histories, participation in a "bad" jury, and a potential family relationship.

Skeen explained that Mauldin shared his last name with defendants that Skeen had recently prosecuted in a high-profile drug case. He also said that his strike was based on a note from Dobbs, who was present during the morning voir dire, which stated that Mauldin glared at him. Skeen added that he did not want to take the chance that Mauldin was related to the drug family or had some resentment toward the prosecution. He concluded that the circumstances, taken together, formed the basis for the strike.

Appellant's counsel cross-examined Skeen, asking if Skeen questioned Mauldin about whether he was related to the Mauldins that he had prosecuted. Skeen responded that, although Mauldin did not raise his hand when the entire panel was asked whether a member of their family had ever been arrested or charged with a criminal offense, he did not want to take the chance that Mauldin had been untruthful. Skeen also testified that he did not ask Mauldin if he had any animosity toward anyone in the prosecutor's office.

After cross-examination, Appellant's counsel argued to the court, emphasizing that Skeen did not sufficiently question Mauldin and other venirepersons. Appellant's counsel

contended that Skeen should have specifically asked Mauldin if he harbored animosity against the District Attorney's office, and if so, if the animosity would affect his ability to assess the merits of the case. The trial court found that Appellant did not prove purposeful discrimination and the reasons given for the strikes were facially sufficient to show race-neutral reasons for the exercise of peremptory strikes.

## ANALYSIS

The focus of this appeal is on the strike of Gregory Mauldin. We granted the State's petition for discretionary review on three related grounds, which we now consider separately.

### Venireperson's Family Relationships

The first ground for review asks if the fact that a venireperson shares the same last name as a known criminal family is a race-neutral reason for the State to exercise a peremptory strike. Skeen testified that, although he did not ask Mauldin if he was related to the family that he had recently prosecuted, he did not want to take the chance that Mauldin was related to the convicted family, and consequently, had some animosity toward the State or Skeen personally. The court of appeals concluded that it was "unreasonable to suppose that Mauldin was related to the prior criminal defendants merely because he had the same last name." *Nieto*, 2010 Tex. App. LEXIS 9953, at *12.

The State argues that the court of appeals improperly substituted its judgment for that of the trial court and disregarded the trial court's evaluation of the demeanor of the

prosecutor and the venire members in determining the prosecutor's genuineness. Appellant contends that the court of appeals was correct in determining that the reasons provided for the strikes were pretextual, given the prosecutor's lack of questioning of Mauldin and other black potential jurors, plus the fact that 83% of the minority jurors in the strike zone were struck by the State.

This Court held that there was no *Batson* violation in *Sterling v. State*, 830 S.W.2d 114, 119 (Tex. Crim. App. 1992), in which the explanation for the peremptory strike was that the potential juror was possibly related to several individuals who had been prosecuted by the district attorney's office, he had been prosecuted by the district attorney's office himself, and he had issues imposing the death penalty. We considered "the prospective juror's voir dire as a whole and accord[ed] due deference to the trial judge's ruling" in determining that the challenge was racially neutral. *Id.* at 118-19. As here, the combination of the circumstances created a credible reason for the strike.

The lack of individual questioning was recently examined by this Court in *Grant v. State*, 325 S.W.3d 655 (Tex. Crim. App. 2010). The court of appeals held that "[t]he State *must* engage in meaningful voir dire examination on a subject it alleges to be concerned about." *Grant v. State*, 2009 Tex. App. LEXIS 3555, at *3 (Tex. App.—Waco May 20, 2009) (citing *Miller-El v. Dretke*, 545 U.S. 231 (2005)). The State claimed that the basis for its strike was that a response on the written questionnaire led the prosecutor to believe that the venireperson's wife knew the defendant's girlfriend because they worked at the

same facility. *Grant*, 325 S.W.3d at 657-58. The appellant argued, and the court of appeals agreed, that the State should have specifically questioned the potential juror to determine if the relationship existed. *Id.*

We determined that the court of appeals should not have given dispositive weight to the lack-of-questioning factor, which is merely one of several factors we articulated in our holding in *Whitsey v. State*, 796 S.W.2d 707 (Tex. Crim. App. 1990), which can be used to determine if the State's reasons for a strike are racially motivated. *Id.* at 661.[3] This Court stated that "a lack of oral questioning to flesh out a written response has significantly less persuasive value when prospective jurors are being questioned together," particularly given the time constraints that are often imposed during the voir dire examination. *Id.* We also held that the court of appeals failed to give proper deference to the trial court's evaluation of the prosecutor's credibility. *Id.*

As in *Grant*, Appellant here argues that Mauldin and other venirepersons should

---

[3] We listed the following factors as tending to show that the State's reasons for a peremptory strike are not supported by the record or are an impermissible pretext:

1. The reason given for the peremptory challenge is not related to the facts of the case;
2. [T]here was a lack of questioning to the challenged juror or a lack of meaningful questions;
3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;
4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
5. [A]n explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Whitsey*, 796 S.W.2d at 713-14.

have been questioned before the State exercised its peremptory strike. Under our holding, the lack of individual questioning is less of an issue when the jurors are questioned together. However, this case is distinguishable from *Grant*, because here, Mauldin did not respond when the panel was asked whether they or anyone they were related to had been convicted or charged with a crime. As the State points out in its brief, a panelist's response may be less than candid. In this case, two panelists failed to report their own prior charges or convictions.

We do not infer from the record that Mauldin was untruthful, but we have held that *Batson* leaves room for the State to exercise peremptory strikes based on a "hunch" or past experience, as long as racial discrimination is not the motive. *Keeton v. State*, 749 S.W.2d 861, 865 (Tex. Crim. App. 1988) (citing *State v. Antwine*, 743 S.W.2d 51, 65 (Mo. 1987)). As the United States Supreme Court explained, the second step of the *Batson* challenge process "does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. at 767-68. However, the reason for the strike by the prosecutor must be credible given the whole of voir dire testimony and other circumstances. *See Miller-El*, 545 U.S. at 252.

In *Miller-El*, 91% of the black panelists were struck. *Id.* at 241. The "more powerful" evidence of racial discrimination was demonstrated by a comparison of similarly situated white and black venire members. *Id.* The State struck a black male that the Court viewed as an ideal juror for the State, but did not strike nonblack panelists with

similar viewpoints. *Id.* at 247. The prosecution also asked to shuffle the array again after black venire members reappeared at the front of the panel. *Id.* at 254. Furthermore, the prosecutors gave a bland description of the death penalty to almost all of the white panelists before asking the individual's feelings on the death penalty, but used a graphic description of the death penalty for more than half of the black venire members. *Id.* at 255-56. Finally, the prosecutor's office was known to use a manual that encouraged a systematic policy of excluding black venire members from the jury. *Id.* at 264.

The United States Supreme Court held that the circumstances present in *Miller-El* clearly demonstrated racial discrimination. The level of suspicion raised by the circumstances here is not nearly as significant as the bias demonstrated in *Miller-El*. Here, a large percentage of minority jurors were struck, but as the Supreme Court articulated, other circumstances, such as disparate treatment of minority and nonminority venire members, is more powerful than "bare statistics." *Id.* at 241. The State struck two white venirepersons who had a close family member that was convicted of a crime, and one white venire member who was convicted of vehicular manslaughter. The prosecution struck two black venirepersons with a criminal history, and two based on possible family connections and the individual's demeanor. Unlike in *Miller-El*, we cannot find clear evidence of disparate treatment here. Furthermore, there is no evidence on the record here to suggest that the district attorney's office engaged in systematic racial discrimination. It was sensible for Skeen to be cautious with Mauldin based on his recent conviction of the

Mauldin family, particularly when coupled with the note that Mauldin glared at another prosecutor. Under these facts, the shared last name constitutes a race-neutral reason for the prosecutor to exercise a peremptory strike.

## Venireperson's Demeanor

The second ground for review asks whether the fact that a venireperson is noted to be "glaring" during voir dire constitutes a race-neutral reason for a peremptory strike. Dobbs, who was not involved in later proceedings, noted that venireperson Mauldin glared at him during the trial court's voir dire. On cross-examination, Skeen explained that he deduced that the animosity toward Dobbs could be transferrable to the district attorney's office because Dobbs is a well-recognized representative of the office. The court of appeals determined that the legitimacy of the State's apprehension was "not obvious" because Mauldin did not glare at Skeen, who prosecuted the Mauldin family. *Nieto*, 2010 Tex. App. LEXIS 9953, at *12.

We have held that the demeanor of a potential juror is a valid reason to exercise a peremptory strike. *Yarborough v. State*, 947 S.W.2d 892 (Tex. Crim. App. 1997). A minority venire member was struck on the basis that he had "poor" facial expressions and body language, which indicated to the prosecutor that the potential juror did not wish to be a part of the proceedings. *Id.* at 893. We held that the counsel's statement about the panelist's demeanor was established as proved, because the statement, made on the record, was undisputed by opposing counsel and unquestioned by the trial judge. *Id.* at

895. The Court emphasized the great deference that should be afforded trial judges because the determination of race neutrality often turns on an evaluation of credibility. *Id.* at 896. However, we noted that appellate courts are not bound to defer to the trial court and can consider factors such as:

> The quantity and quality of either party's examination of the challenged venire member, whether the *Batson* movant cross-examined the counsel who made the peremptory challenge, whether the *Batson* movant rebutted the description of the venire member, whether the *Batson* movant proved that venire members of similar demeanor were not struck, and whether the judge was asked to rule on any conflict of fact.

*Id.*

In applying the factors here, neither party examined Mauldin outside of his response to the questions presented to the entire panel. Appellant's trial counsel cross-examined the prosecutor, questioning why Skeen did not ask Mauldin if he harbored any animosity toward the State. Appellant's counsel did not rebut the description of Mauldin's glaring, but asked if others made the same observation, which they had not. Another black venire member was struck based on his demeanor, but there is no evidence on the record indicating that a non-minority venire member had a negative demeanor, but was not struck. The judge was not asked to rule on any issue of fact.

The State's description of Mauldin's demeanor is considered proved on the record because Appellant's counsel did not rebut the observation. We require exceptional circumstances to warrant the reversal of a trial court's ruling on a *Batson* motion, and find no such circumstances here. The trial court's determination that the strike was racially

neutral was not clearly erroneous. Accordingly, we sustain the State's second point of error.

### Review of Additional Strikes

The final ground for review asks whether the court of appeals failed to consider the racially neutral reasons for striking the other four minority venirepersons. Because we are granting relief to the State, we need not review this ground.

### CONCLUSION

The trial court properly evaluated the *Batson* claim. The court was familiar with the prosecutor because he appeared in front of the judge on numerous occasions, which is reflected in the record. As we have held several times, the trial court is in the best position to determine the genuineness of the State's proffered reasons for a strike, and a reviewing court may not substitute its judgment for the trial court's.

A review of the entire voir dire and the circumstances of the case does not demonstrate a pretext. Given the combination of the potential family connection and Mauldin's demeanor, plus the fact that the one Hispanic juror was not struck by the State, we cannot conclude that the trial court clearly erred in finding that the State's proffered reasons for the strike were not a pretext for racial discrimination. Therefore, we reverse the judgment of the court of appeals and remand the case to the court of appeals to consider any remaining issues.

Meyers, J.

Filed: May 9, 2012

Publish