

## NUMBERS 13-14-00191-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

SALMA MONALA-KHALIL, **Appellant,**

**v.**

THE STATE OF TEXAS, **Appellee.**

**On appeal from the County Court at Law No. 2
of Orange County, Texas.[1]**

## MEMORANDUM OPINION
**Before Chief Justice Valdez and Justices Benavides and Perkes
Memorandum Opinion by Justice Perkes**

Appellant, Salma Monala-Khalil, appeals her conviction for driving while

intoxicated. *See* TEX. PENAL CODE ANN. § 49.04 (b) (West, Westlaw through 2015 R.S.).

A jury found appellant guilty, and the trial court assessed appellant's punishment at a fine

---

[1] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, the appeal has been transferred to this Court from the Ninth Court of Appeals in Beaumont. *See* TEX. GOV'T CODE ANN. § 73.001 (West, Westlaw through Ch. 46 2015 R.S.).

of $300.00 and 180 days of confinement in jail, but suspended the imposition of sentence and placed appellant on community supervision for a period of one year. By a single issue, appellant argues the trial court erred by overruling her *Batson* motion.[2] We affirm.

## I. BACKGROUND

During jury voir dire, two black females were present on the jury panel: venire member 5 and venire member 17. The State questioned venire member 5 along with three other venire members regarding why the State should prosecute minor DWI infractions. The State also questioned venire member 5 and others about the reasons for a person's refusal to submit to a breath test during a DWI investigation. Appellant's counsel did not question venire member 5.

After conducting voir dire, neither appellant nor the State offered challenges for cause. The State, by way of a preemptory challenge, struck venire members 4, 5, and 10.[3] This prompted appellant's trial counsel to make a *Batson* motion, explaining that appellant is of Middle Eastern descent but "her complexion, her hair, and skin tend to lead her to look African-American." Defense counsel concluded that the State's "challenge has to have been because of race because everything else [venire member 5] said was absolutely pro law enforcement and pro the State."

During voir dire and outside the presence of the panel, the court asked the State to explain its rationale for striking venire member 5.

[STATE]: Yes, Judge. [NUMBER 5]—I believe I asked her two

---

[2] *See Batson v. Kentucky*, 476 U.S. 79 (1986).

[3] Venire member 17, the only other black female on the panel, was beyond the "strike line"; meaning that without challenges for cause, only the first 12 venire members had the possibility of becoming part of the jury.

questions. You could attribute it mostly probably to nervousness—she was, of course, on the front row. But she was very soft spoken and a little bit difficult to hear, and that was the singular reason that she was struck.

[COURT]: All right. [DEFENSE], questions?

Appellant's counsel responded with argument, but did not cross-examine the prosecutor.

[DEFENSE]: Your Honor, again, I believe—without saying—I used to say that's the scam. But the Court of Appeals, I think, have changed that. But the bottom line is she was—she answered several questions, that drinking was against the law, drinking and driving was against the law. All of her questions were pro law enforcement. And from the demeanor of her and the Court's recognition of her, I didn't see any timidity in any of her answering and didn't have to speak up for the court reporter to hear and—such things. So, I believe that the strike was racially motivated.

[COURT]: All right. Well, I know I had a hard time hearing [NUMBER 5]; and the Court will deny the motion.

The trial court denied appellant's *Batson* challenge.

## II.    BATSON CHALLENGE

By her sole issue, appellant contends the trial court's ruling on her *Batson* motion was not supported by the record and therefore clearly erroneous.

## A.    Standard of Review

In reviewing a *Batson* point of error, we examine the evidence presented at the *Batson* hearing to determine whether the State was racially motivated in using a peremptory challenge against a member of the venire panel. *Pondexter v. State,* 942 S.W.2d 577, 581 (Tex. Crim. App. 1996). We must determine whether the trial court's findings were clearly erroneous by "examining the evidence in the light most favorable to

3

the trial court's ruling," and "absent some other evidence which rebuts the State's race-neutral explanation, we will not disturb the trial court's finding that the State's explanation is legitimate." *Id.* (quoting *Chambers v. State,* 866 S.W.2d 9, 25 (Tex. Crim. App. 1993)). In reviewing the record for clear error, we consider the entire record of voir dire. *Watkins v. State*, 245 S.W.3d 444, 448 (Tex. Crim. App. 2008). We do no limit ourselves to arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are manifestly grounded in the appellate record. *Id.* We review the trial court's finding on the issue of discriminatory intent with great deference because the trial court is in the best position to assess the credibility of the State's explanation. *Mandujano v. State,* 966 S.W.2d 816, 819 (Tex. App.—Austin 1998, pet. ref'd) (citing *Hernandez v. New York,* 500 U.S. 352, 365 (1991)). "Deference to the trial court is especially appropriate where a trial judge denying a *Batson* objection has made a finding that an attorney credibly relied on demeanor in exercising a peremptory strike." *Davis v. Fisk Elec. Co.*, 268 S.W.3d 508 (Tex. 2008) (citing *Snyder v. Louisiana*, 552 U.S. 472, 479 (2008)).

### B.    Applicable Law

The exclusion of a person from jury service because of that person's race violates the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky,* 475 U.S. 79, 89 (1986). A criminal defendant is entitled to a trial by a jury whose members were selected on a racially neutral, nondiscriminatory basis. *See* TEX. CODE CRIM. PROC. ANN. art. 35.261 (West, Westlaw through Ch. 46 2015 R.S.) A defendant may challenge the State's peremptory strikes on the basis of discrimination. *See Yarborough v. State,*

4

947 S.W.2d 892, 894 (Tex. Crim. App. 1997) (en banc).

A hearing on a challenge to a party's peremptory challenge requires the trial court to follow a three-step process. *Ford v. State,* 1 S.W.3d 691, 693 (Tex. Crim. App. 1999). First, the party challenging the strike must present a prima facie case of racial discrimination. *Id.* If the challenging party presents a prima facie case of racial discrimination, the strike's proponent must then give a race-neutral explanation for the strike. *Id.* A racially neutral explanation is one that, on its face, does not deny equal protection. *Johnson v. State,* 959 S.W.2d 284, 289–90 (Tex. App.—Dallas 1997, pet. ref'd). To be sufficient, the State's explanation for exercising a peremptory strike "need not rise to the level justifying exercise of a challenge for cause." *Batson,* 476 U.S. at 127. Even an explanation that is seemingly "silly or superstitious" will satisfy this step of the *Batson* process. *Purkett v. Elem,* 514 U.S. 765, 767 (1995). Finally, once the strike's proponent provides a race-neutral explanation, the challenging party must then prove by a preponderance of the evidence that the race-neutral explanation was a sham or pretext for discrimination. *Ford,* 1 S.W.3d at 693.

The following factors are relevant to show that the reasons for a peremptory strike are not supported by the record or are an impermissible pretext: (1) the reason given for the peremptory challenge is not related to the facts of the case; (2) there was a lack of questioning to the challenged juror or a lack of meaningful questions; (3) disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck; (4) disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of

other panel members; and (5) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically. *Whitsey v. State*, 796 S.W.2d 707, 713–14 (Tex. Crim. App. 1990). The ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the [peremptory] strike. *Purkett*, 514 U.S. at 768.

### III.    DISCUSSION

Appellant questions the sufficiency of the State's response to appellant's *Batson* challenge. In doing so, appellant argues that venire member 5's answers during voir dire reflected favorably on the State's position. Additionally, appellant claims that venire member 5 received "disparate treatment" from other similarly situated members of the jury panel. Appellant points out that venire member 7 and venire member 5 answered the same question similarly, yet venire member 7 was on the jury while venire member 5 was not. Appellant also asserts that the State's reason for striking venire member 5 was unrelated to the facts of the case.

While we are mindful that subjective evaluations of venire members can disguise violations of the Equal Protection Clause, we must also remember that trial judges are able to detect pretexts. *Yarborough,* 947 S.W.2d at 896. Although appellant's counsel contradicted the prosecutor's characterization of venire member 5, the trial court agreed with the prosecutor, essentially making a finding of fact that venire member 5 was difficult to hear. While we do agree that the State's reason for dismissing venire member 5 had nothing to do with the facts of the case, the demeanor of a potential juror is a valid reason to exercise a peremptory strike. *Id.* at 892 (affirming denial of *Batson* challenge when

6

minority venire member was struck on basis that he had "poor" facial expressions and body language, which indicated to prosecutor that he did not want to be part of proceedings).

Although we show great deference to the trial court on evaluations of credibility, we are not bound to defer to the trial court. *Nieto v. State*, 365 S.W.3d 673, 680 (Tex. Crim. App. 2012). We look to such factors as: (1) the quantity and quality of either party's examination of the challenged venire member; (2) whether the *Batson* movant cross-examined the counsel who made the peremptory challenge; (3) whether the *Batson* movant rebutted the description of the venire member; (4) whether the *Batson* movant proved that venire members of similar demeanor were not struck; (5) and whether the judge was asked to rule on any conflict of fact. *Id.*

The State asked venire member 5 the same questions posed to other venire members and did not tailor its questions to her solely to elicit a certain response from her. There was no cross-examination of the prosecutor by appellant to invalidate the grounds offered by the State. Appellant's only attempt to meet his burden of persuasion was disputing the factual validity of the State's observations; which was rejected by the trial court. We disagree with appellant that juror number 5 received "disparate treatment" because nothing in the record shows that another soft-spoken venire member was chosen for the jury.

Appellant's rebuttal was insufficient to establish the State's reason was a pretext. After examining the record, we conclude the trial court's finding was not clearly erroneous. *See Pondexter*, 942 S.W.2d at 581–82. Appellant's point of error is overruled.

7

## IV.    CONCLUSION

We affirm the trial court's ruling.

GREGORY T. PERKES
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
17th day of September, 2015.