**Affirmed and Memorandum Opinion filed April 9, 2019.**



In The

# Fourteenth Court of Appeals

___

### NO. 14-17-00770-CR

___

**JOSEPH ARTHUR ALRIDGE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Court Cause No. CR31056**

## MEMORANDUM OPINION

Appellant Joseph Arthur Alridge appeals his conviction for aggravated robbery. A jury convicted appellant, he pleaded true to two punishment enhancement allegations, and the trial court sentenced him to life in prison. In his sole issue on appeal, appellant contends that the trial court erred in denying his *Batson* challenge after the State used peremptory challenges to strike two African-American prospective jurors. We affirm.

## *Background*

Appellant was accused of robbing an Exxon service station and causing bodily injury to a store clerk in the process. At the conclusion of voir dire, the State used two of its peremptory challenges to strike two African-Americans from the venire panel (venire members 11 and 23) who were of the same racial minority as appellant. Appellant then raised a *Batson* challenge to the strikes.[1]

In response, regarding venire member 11, one of the prosecutors stated that the venire member "had appeared to react disfavorably when she was asked questions and when she was answering questions directly to the state." There was also a concern among the prosecutors, based on the venire member's last name (Hebert), that she might be related to a former employee in the district court clerk's office whose employment was terminated after a "shouting match" with one of the prosecutors in the case. Regarding venire member 23, one of the prosecutors stated that the venire member was "noticeably asleep" several times during voir dire by both sides and that the bailiff had to wake her up at one point. When the bailiff was asked about this, he at first stated that he thought he had woken venire member 44, but when further questioned, he changed his answer and said it was venire member 23.

After the prosecutors provided explanations for the challenged strikes, the trial judge asked appellant's counsel if he had any other evidence in support of his *Batson* challenge. Defense counsel stated, "No, Judge. Those were the only two black individuals in the strike zone struck." The trial judge then found that the prosecutors had articulated a race-neutral basis for exercising their peremptory challenges and overruled the *Batson* challenge.

---

[1] *Batson v. Kentucky*, 476 U.S. 79, 86 (1986).

## *Governing Law*

In *Batson v. Kentucky*, the United States Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits a prosecutor from exercising peremptory challenges based solely on the race of potential jurors. 476 U.S. 79, 89 (1986); *see also Nieto v. State*, 365 S.W.3d 673, 675 (Tex. Crim. App. 2012). Even a single impermissible strike for a racially motivated reason invalidates the jury-selection process and requires a new trial. *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008); *Finley v. State*, 529 S.W.3d 198, 205 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd).

A *Batson* challenge consists of three steps. *Nieto*, 365 S.W.3d at 675. First, the defendant must make a prima facie showing of racial discrimination in the State's use of a peremptory strike. *Id*. Second, once the defendant makes the requisite showing, the State must articulate a race-neutral explanation for the strike. *Id*. The race-neutral explanation is a burden of production only and does not have to be "persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68 (1995). The issue is the facial validity of the explanation; unless a discriminatory intent is inherent, the explanation will be deemed race neutral. *Id*. Third, the trial court must determine if the defendant has proved purposeful discrimination by a preponderance of the evidence. *Blackman v. State*, 414 S.W.3d 757, 764-65 (Tex. Crim. App. 2013); *Nieto*, 365 S.W.3d at 675. The burden of persuasion always remains on the defendant. *See Jasper v. State*, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001).

We review a trial court's ruling on a *Batson* challenge for clear error, focusing on the genuineness of the asserted non-racial explanation for the strike, rather than the reasonableness. *Nieto*, 365 S.W.3d at 676. In conducting our review, we must consider the entire voir dire record and are not limited to

3

arguments or considerations that the parties specifically called to the trial court's attention so long as those arguments or considerations are firmly grounded in the appellate record. *See id.*; *Finley*, 529 S.W.3d at 205-06. We afford great deference to the trial court's ruling on the issue of discriminatory intent because a finding regarding intentional discrimination largely turns on the trial court's evaluation of the demeanor and credibility of the attorney who exercised the peremptory challenge. *Finley*, 529 S.W.3d at 206. Additionally, race-neutral reasons for peremptory challenges often invoke a juror's demeanor, making the trial court's firsthand observations of even greater importance. *Snyder*, 552 U.S. at 477. We will not disturb the trial court's ruling unless we are left with a definite and firm conviction that a mistake has been made. *Hernandez v. New York*, 500 U.S. 352, 369 (1991).

## *Analysis*

It is unclear whether appellant established a prima facie case of racial discrimination, the first step of a *Batson* challenge. *See generally Hassan v. State*, 369 S.W.3d 872, 875 (Tex. Crim. App. 2012) (discussing circumstances for trial court to consider in determining whether a prima facie case has been presented). Appellant does not cite and the record does not appear to contain any information regarding the ethnicity of any members of the venire panel besides numbers 11 and 23. It therefore cannot be determined on appeal what percentage of the jury pool were minorities, what percentage of minorities that otherwise would have been placed on the jury were struck by the State, or what the ultimate racial make-up of the jury was. *See, e.g.*, *Nieto*, 365 S.W.3d at 677 (noting trial court found defendant "made a prima facie showing of race discrimination based on the number of peremptory strikes against minority members, the composition of the panel before and after the exercise of the strikes, and the [defendant]'s race"). It

4

also cannot be determined whether the State treated the black venire members in a disparate fashion from non-black venire members. *See, e.g.*, *id*. at 679 (explaining that disparate treatment of minority venire members is more powerful evidence of discrimination than bare statistics); *Finley*, 529 S.W.3d at 210 (noting defendant neither argued the State engaged in disparate treatment nor presented evidence of the panel's racial make-up).

However, we need not determine whether appellant made a prima facie case of racial discrimination because the State offered race-neutral explanations for its strikes of venire members 11 and 23, thereby mooting the issue of appellant's prima facie case. *See Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) ("If, as here, the State offers a race-neutral explanation before any inquiry on the prima facie case, the issue of a prima facie case is moot."); *Finley*, 529 S.W.3d at 206 (following *Simpson*). We turn then to the second step in the *Batson* process, the State's race-neutral explanations for the strikes.

As discussed above, the prosecutors offered as their explanation for striking venire member 11 that (1) she "appeared to react disfavorably" when being asked and answering questions by the State, and (2) she shared a last name with a former district clerk's office employee whose employment was terminated after a "shouting match" with one of the prosecutors.[2] The Court of Criminal Appeals addressed substantially similar circumstances in *Nieto*, where the prosecutors provided as reasons for the strikes the fact that the struck venire member had the same last name as a family that one of the prosecutors had recently prosecuted and the venire member glared at one of the prosecutors during voir dire. 365 S.W.3d at

---

[2] It should further be noted that when the venire panel was asked if any of them knew any of the attorney's in the case, venire member 11 acknowledged knowing the prosecutor who had engaged in the "shouting match." This lends credence to the concern that venire member 11 was possibly related to the former district clerk's office employee.

677. The Court discussed the fact that, like here, the prosecutors did not ask any questions to determine whether the venire member was related to the family in question, but the court ultimately held that the combination of factors constituted a race-neutral reason for exercising a peremptory strike. *Id.* at 679.[3] Similarly, here, although the State did not ask venire member 11 any follow up questions, the reported negative reactions by venire member 11 to voir dire questioning by the State coupled with the shared last name with someone who had had a life-altering conflict with one of the prosecutor's was sufficient to constitute a race-neutral reason for the peremptory strike.

Regarding venire member 23, one of the prosecutors stated that he observed the venire member "noticeably asleep" several times during voir dire by both sides and that the bailiff had to wake her up at one point. When the bailiff was asked about this, he at first stated that he thought he had woken a different venire member but then changed his answer to say it was venire member 23. We must, of course, defer to the trial judge on issues of credibility pertaining to whether or not venire member 23 was sleeping. *See Finley*, 529 S.W.3d at 206. Moreover, defense counsel did not dispute the observation. *See Nieto*, 365 S.W.3d at 680 (treating prosecutor's statement regarding demeanor of venire member as proved because opposing counsel did not rebut the observation). That the venire member was sleeping during part of the voir dire process would certainly constitute a race-neutral reason for the exemplary strike. *See, e.g.*, *Rhoades v. State*, 934 S.W.2d

---

[3] The Court specifically stated:

> It was sensible for [the prosecutor] to be cautious with [the venire member] based on his recent conviction of the . . . family, particularly when coupled with the note that [the venire member] glared at another prosecutor. Under these facts, the shared last name constitutes a race-neutral reason for the prosecutor to exercise a peremptory strike.

*Nieto*, 365 S.W.3d at 679.

113, 124 (Tex. Crim. App. 1996); *McGee v. State*, 342 S.W.3d 245, 247 (Tex. App.—Amarillo 2011, pet. ref'd); *Lamons v. State*, 938 S.W.2d 774, 778 (Tex. App.—Houston [14th Dist.] 1997, pet. ref'd).

Turning to the third step of a *Batson* challenge, when asked by the judge for additional evidence suggesting the strikes were racially motivated, defense counsel indicated that he did not have any further evidence and said "[t]hose were the only two black individuals in the strike zone struck." Although somewhat ambiguous, this statement appears to suggest that other African Americans were not struck from the eventual jury. More importantly, the total sum of evidence suggesting that the challenged peremptory strikes constituted purposeful discrimination appears to be that the struck venire members are African American, as is appellant. Under the circumstances presented, appellant therefore fell short of his burden of proving purposeful discrimination by a preponderance of the evidence. *See Blackman*, 414 S.W.3d at 764-65; *see also Johnson v. State*, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) ("[A]ppellant had the burden to show that the explanation given was merely a pretext for discrimination. [A] party's failure to offer any real rebuttal to a proffered race neutral explanation can be fatal to his claim. Here, appellant has failed to prove that the prosecutor's explanation was incorrect, much less that it was a pretext for discrimination."). Accordingly, we overrule appellant's sole issue.

We affirm the trial court's judgment.


/s/     Frances Bourliot
Justice


Panel consists of Justices Christopher, Bourliot, and Spain.

Do Not Publish — TEX. R. APP. P. 47.2(b).