**Affirmed and Opinion filed January 28, 2020.**



In The

# Fourteenth Court of Appeals

### NO. 14-19-00025-CR

**SAMUEL MORTAY GRANDERSON, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 85th District Court**
**Brazos County, Texas**
**Trial Court Cause No. 18-01714-CRF-85**

## OPINION

In this appeal from a conviction for evading arrest or detention in a motor vehicle, the sole question presented is whether the trial court erred when it denied a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).

### BACKGROUND

Sixty-two venirepersons were summoned for jury selection in this case. The trial court struck six of those venirepersons for cause, and allowed ten peremptory

strikes each for the prosecution and the defense. The strike zone for regular, non-alternate jurors ended with Venireperson 38.

Four African Americans were within that strike zone: Venirepersons 9, 12, 27, and 32. The prosecution exercised peremptory strikes against the first three of these venirepersons. Even though neither the prosecution nor the defense exercised a peremptory strike against Venireperson 32, this fourth venireperson was not seated on the jury because four of the prosecution's other peremptory strikes overlapped with the defense's peremptory strikes. Due to these double strikes, the last of the regular, non-alternate jurors to be seated was Venireperson 31. In effect, no African Americans sat on the jury.

The defense lodged a *Batson* challenge before the jury was sworn. The defense pointed out that appellant was an African American, and that the prosecution had exercised peremptory strikes against three of the four African Americans in the strike zone.

The prosecution responded that, because of the four double strikes, it could not have predicted that no African Americans would be seated on the jury. The prosecution also asserted race-neutral explanations for the peremptory strikes. The prosecution explained that Venireperson 9 was not perceived as a good fit because he believed that rehabilitation should be the primary focus of the criminal justice system. Also, the prosecution explained that Venireperson 9 made certain body movements that were critical of other venirepersons as they were responding to questions during voir dire. The body movements indicated to the prosecution that Venireperson 9 did not believe that a driver should "just stop" whenever the driver noticed law enforcement in the rear view mirror with emergency lights engaged.

The prosecution explained that it exercised a peremptory strike against Venireperson 12 because she was a former corrections officer. "That's someone that

we did not want on a jury," the prosecution stated, "specifically, a jury that would be assessing punishment."

The prosecution finally explained that there were concerns that Venireperson 27 might require proof of a motive, even though the trial court had advised her during a bench conference that motive was not an element of the offense. The prosecution also explained that Venireperson 27 would not have been appropriate for the jury because she opined that rehabilitation should be the purpose of the criminal justice system.

In rebuttal, the defense complained of disparate treatment, noting that the prosecution had exercised a peremptory strike against Venireperson 12 because she was a former corrections officer, but not against another venireperson who was currently employed as a police officer. The prosecution requested an opportunity to respond to this point, but the trial court issued a ruling denying the *Batson* challenge instead.

## ANALYSIS

The defense has the initial burden under *Batson* to make a prima facie showing that the prosecution engaged in purposeful discrimination through the exercise of a peremptory strike. *See Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008). If the defense makes this requisite showing, the burden shifts to the prosecution to tender a race-neutral explanation for the peremptory strike. *Id.* Whether the race-neutral explanation is genuine or pretextual is a question of fact for the trial court to decide in the first instance. *Id.*

Our review of the trial court's ruling is highly deferential because the trial court is in the unique position to assess the credibility and demeanor of the prosecution, and thus, the genuineness of the asserted non-racial explanation. *See*

3

*Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012). Under our deferential standard, we may not substitute our judgment for the judgment of the trial court in deciding that the prosecution's explanation was a pretext. *Id.* Instead, we must consider the record in the light most favorable to the trial court's ruling, and we must uphold that ruling unless it is clearly erroneous. *Id.*

Here, the record shows that the prosecution exercised peremptory strikes against three of the four African Americans in the strike zone. We need not determine whether this percentage of strikes gives rise to a prima facie showing of purposeful discrimination because the prosecution offered race-neutral explanations for each of the strikes. *See Simpson v. State*, 119 S.W.3d 262, 268 (Tex. Crim. App. 2003) ("If, as here, the State offers a race-neutral explanation before any inquiry on the prima facie case, the issue of a prima facie case is moot.").

The prosecution explained that Venireperson 9 was stricken because of his preference for rehabilitation and because of his body language during voir dire. Both of these explanations are race-neutral on their face. *See Yarborough v. State*, 947 S.W.2d 892, 893–95 (Tex. Crim. App. 1997) (body language); *Adanandus v. State*, 866 S.W.2d 210, 224–25 (Tex. Crim. App. 1993) (preference for rehabilitation). Also, the trial court's implied finding that these explanations were genuine is supported by the record: Venireperson 9 announced his preference for rehabilitation in open court, and the prosecution's description of Venireperson 9's body language was discussed during the *Batson* hearing and was not challenged by either the defense or the trial court. *See Nieto*, 365 S.W.3d at 680 ("Counsel's statement about the panelist's demeanor was established as proved, because the statement, made on the record, was undisputed by opposing counsel and unquestioned by the trial judge."). Accordingly, as for Venireperson 9, the trial court's ruling denying the *Batson* challenge was not clearly erroneous.

4

Proceeding to the next peremptory strike, the prosecution explained that Venireperson 12 was a bad fit for the jury because she was formerly a corrections officer. A venireperson's occupation or professional background can qualify as a race-neutral explanation for a peremptory strike. *See Tompkins v. State*, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987). And here, the prosecution may have reasonably believed that if Venireperson 12 had a background dealing with serious offenders, she might not view appellant as seriously because he was only charged with evading arrest or detention, and not a more violent offense. Likewise, the trial court could have accepted the prosecution's race-neutral explanation as genuine because, in a pre-trial hearing conducted outside the presence of the venire panel, the defense indicated that appellant would plead guilty to the charged offense and ask for the jury to assess his punishment.

As for the last peremptory strike, the prosecution explained that Venireperson 27 was stricken because she made several statements indicating that she might have demanded a greater quantum of proof than required by law, and because she expressed a preference for rehabilitation over punishment. These explanations are race-neutral as well, and plainly supported by the record. *See Williams v. State*, 804 S.W.2d 95, 106–07 (Tex. Crim. App. 1991) (holding that the prosecution's peremptory strike was race-neutral where the venireperson "had difficulty with the State's burden of proof").

In his brief, appellant faults the trial court for accepting the prosecution's explanations at face value and for not making specific findings as to whether the prosecution had engaged in purposeful discrimination. But appellant had the burden of persuasion to show that a peremptory strike was racially motivated, and the trial court allowed appellant an opportunity to challenge the prosecution's explanations during rebuttal. *See Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App.

2013). By overruling appellant's *Batson* challenge, the trial court implicitly found that appellant did not satisfy his burden. Express findings were not required. *See Earhart v. State*, 828 S.W.2d 607, 624 (Tex. Crim. App. 1991) ("The trial court implicitly found that the State offered race-neutral reasons for peremptorily striking veniremember Lang. This Court must accept that finding unless we determine that it is clearly erroneous."), *vacated on other grounds by Johnson v. Texas*, 509 U.S. 350 (1993).

Appellant also complains of disparate treatment because the prosecution cited Venireperson 12's background as a corrections officer as the basis for a peremptory strike, yet the prosecution did not strike another venireperson who had a similar background as a police officer. When appellant presented this claim of disparate treatment in the trial court, he did not identify the other venireperson by name or number. Nor has he provided specific identification in his brief on appeal. But based on the record as a whole, appellant seems to be referring to Venireperson 6, whose background as a police officer was mentioned multiple times during voir dire. The ethnicity of Venireperson 6 is not apparent from the record, but he was omitted from the list of African Americans identified in the strike zone.

Venireperson 12 did not discuss her former job duties, but the trial court could have reasonably determined that, as a corrections officer, she likely worked in a prison or with probationers. Venireperson 6 did not discuss his job duties as a police officer either, other than to mention that he has administered a person's *Miranda* rights prior to an interrogation, which normally occurs before the person has been convicted of an offense.

Even though both venirepersons can be regarded as law enforcement officials, their occupations generally serve in different stages of the criminal justice system. Police officers serve on the front end, dealing with investigations and enforcement;

6

whereas corrections officers serve on the back end, dealing with punishment and community supervision. Because of these different stages, the venirepersons could reasonably be expected to draw on different professional experiences. For example, Venireperson 6 would have been much more likely than Venireperson 12 to have trained for or participated in a vehicular pursuit. That background would have been relevant to the current case, which might explain why the prosecution did not strike Venireperson 6, whereas the defense did.

In any event, the trial court could have reasonably rejected the defense's claim of disparate treatment because the occupations of the two venirepersons were not exactly the same. *See Cantu v. State*, 842 S.W.2d 667, 689 (Tex. Crim. App. 1992) (noting that disparate treatment cannot automatically be imputed in every situation because "the decision to strike a particular venireperson . . . often hing[es] on the interaction of a number of variables and permutations" and "it is unlikely that two venirepersons on one panel will possess the same objectionable attribute or character trait in precisely the same degree").

Having viewed the record in the light most favorable to the trial court's ruling, we conclude that the denial of the *Batson* challenge was not clearly erroneous as to any of the peremptory strikes.

**CONCLUSION**

The trial court's judgment is affirmed.

/s/    Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Bourliot.

Publish — Tex. R. App. P. 47.2(b).