**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00070-CR**
_____

**RICARDO SALDANA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 9th District Court**
**Montgomery County, Texas**
**Trial Cause No. 22-04-04175-CR**

**MEMORANDUM OPINION**

In May of 2022, a grand jury indicted Appellant Ricardo Saldana for evading arrest or detention with a motor vehicle. In September and November of 2022, a grand jury re-indicted Saldana in the same trial cause for evading arrest or detention with a motor vehicle, and the indictment included two paragraphs alleging that Saldana had been previously convicted of two felonies. The "reindictment" also alleged that Saldana used a deadly weapon—namely, a motor vehicle—in the commission of the offense, but at trial, the State abandoned the deadly weapon

1

allegation. Saldana pleaded "not guilty" to the offense charged, and "not true" to the alleged enhancements, and the case was tried before a jury. The jury found Saldana guilty as charged in the indictment. Saldana elected to have the trial court decide his punishment and the trial court found the enhancements true and assessed punishment at twenty-five years of imprisonment. In a single issue on appeal, Appellant argues that the trial court erred by denying his *Batson* challenges to the State's peremptory strikes[1] of "four jurors with Hispanic surnames." We affirm.

## Background[2]

Deputy Dalton Fields with the Montgomery County Precinct 4 Constable's Office testified that on April 1, 2022, at about 2:30 in the morning, he was on FM 1485 in Conroe in a marked police vehicle. According to Fields, the speed limit at that location is 45 miles per hour, and Fields saw a Lincoln Town Car going about 80 miles an hour. The Deputy decided to run the Town Car's license number to get information about the driver. The Deputy arrived at an intersection where the light was red. The Deputy was in the left lane, and the Town Car was in the right lane. The Deputy looked at the driver, and the driver put his car in reverse and drove backwards about 30 yards. At that point, the Deputy turned on his emergency lights,

---

[1] "A peremptory challenge is made to a juror without assigning any reason therefor." Tex. Code Crim. Proc. Ann. art. 35.14.

[2] Because Appellant only challenges the trial court's denial of his *Batson* challenge, we provide only a brief overview of the evidence surrounding his arrest and conviction.

and the other driver drove forward through the red light. The Deputy followed, and at some point, the driver drove into a wooded area and struck a telephone pole, then jumped out of the car and took off on foot.

The Deputy called for assistance. Several officers responded, including Deputy Michael Porter with the Montgomery County Sheriff's Office, who arrived with his trained police dog, Loki. Deputy Porter and Loki found the suspect hiding in a garage on a residential property. The officers identified the suspect as Ricardo Saldana, and Saldana was arrested for evading arrest or detention. Deputy Field's dash cam video and the body cam video of another officer who was with Fields that night were admitted into evidence and played for the jury. Deputy Fields testified that in the body cam video, Saldana says that he ran because he had warrants.

Issue

In a single issue, Appellant argues that the trial court erred by denying his *Batson* challenges to the State's peremptory strikes of four jurors with Hispanic surnames. According to Appellant,

> [e]very prospective juror bearing an [H]ispanic surname in Appellant's case, save and except one, [] was struck peremptorily by the State in violation of Appellant's rights under the 5th, 6th and 14th Amendments of the U.S. Constitution and Article 35.261 of the Texas Code of Criminal Procedure[,] which prohibits the use of peremptory challenges by the State based upon race.

Appellant further argues that he has shown that he is Hispanic and the potential jurors on whom the State exercised four peremptory strikes were Hispanic, "which

3

raises the spect[e]r of racial discrimination in violation of *Batson*." That said, Appellant acknowledges that one person who served as a juror had a Hispanic surname and the State did not exercise a strike on that juror.

Applicable Law

The Texas Code of Criminal Procedure prohibits the use of peremptory challenges to exclude prospective jurors based on race. Tex. Code Crim. Proc. Ann. art. 35.261. Striking a prospective juror based on race also violates the equal protection guarantees of the United States Constitution. *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). In *Batson*, the United States Supreme Court held that a prosecutor is forbidden from exercising peremptory strikes based solely on the race of the potential juror. *Id.* at 89. To succeed on a *Batson* challenge, the defendant must demonstrate by a preponderance of the evidence that the prosecutor indulged in purposeful discrimination against a member of a constitutionally protected class in exercising his peremptory challenges. *Watkins v. State*, 245 S.W.3d 444, 447 (Tex. Crim. App. 2008).

> Courts analyze *Batson* claims using a three-step process:
>
> (1) the opponent of the peremptory challenge must present a prima facie case of racial discrimination, (2) if that is done, the burden shifts to the proponent of the peremptory challenge to present a race-neutral reason for the challenge, and (3) if that is done, the trial court must then determine whether the opponent has proven purposeful racial discrimination.

4

*Colone v. State*, 573 S.W.3d 249, 262-63 (Tex. Crim. App. 2019); *see also Snyder v. Louisiana*, 552 U.S. 472, 476-77 (2008).

At step two of the process, the proponent of the peremptory challenge only needs to tender an explanation that is racially neutral on its face. *See Colone*, 573 S.W.3d at 263 (citing *Blackman v. State*, 414 S.W.3d 757, 764-65 (Tex. Crim. App. 2013)); *see also Purkett v. Elem*, 514 U.S. 765, 768 (1995) ("'Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'") (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion)); *Williams v. State*, 301 S.W.3d 675, 689 (Tex. Crim. App. 2009). If the court determines that the explanation given at the second step is race neutral, then at step three, the opponent of the peremptory challenge bears the burden of persuasion to show that the race neutral explanation is not genuine but was the product of purposeful discrimination. *See Colone*, 573 S.W.3d at 263 (citing *Blackman*, 414 S.W.3d at 764-65). The defendant must prove by a preponderance of the evidence that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or pretext. *See Watkins*, 245 S.W.3d at 451-52. "In evaluating purposeful discrimination, a court inquires as to whether 'the prosecutor's stated reasons were the actual reasons or instead were a pretext for discrimination.'" *Compton v. State*, 666 S.W.3d 685, 698 (Tex. Crim. App. 2023) (quoting *Flowers v. Mississippi*, 139 S. Ct. 2228, 2241 (2019)). At the

trial court level, this determination requires the trial judge to evaluate the prosecutor's credibility and demeanor. *Id.* "[T]hese determinations of credibility and demeanor lie 'peculiarly within a trial judge's province[.]'" *Snyder*, 552 U.S. at 477 (quoting *Hernandez*, 500 U.S. at 365); *see also Compton*, 666 S.W.3d at 698 (quoting *Flowers*, 139 S. Ct. at 2244). At the appellate court level "'a reviewing court ordinarily should give those findings great deference.'" *Compton*, 666 S.W.3d at 698 (quoting *Flowers*, 139 S. Ct. at 2244). So, a trial judge's ruling on the third step must be upheld on appeal unless it was "clearly erroneous." *Id*.

In reviewing for clear error on appeal, we consider the entire voir dire record. *Id*. (citing *Blackman*, 414 S.W.3d at 765). We are not limited to arguments or considerations that the parties called to the trial judge's attention, so long as the arguments or considerations are grounded in the appellate record. *Id.*; *Blackman*, 414 S.W.3d at 765; *Nieto v. State*, 365 S.W.3d 673, 676 (Tex. Crim. App. 2012) (citing *Watkins*, 245 S.W.3d at 448). Factors we may consider include: (1) statistical evidence, (2) evidence of disparate questioning of similarly-situated venirepersons, (3) side-by-side comparisons of the stricken venirepersons and the accepted venirepersons, (4) whether the record supports the State's explanations for its strikes, and (5) any other relevant circumstances bearing on the issue of purposeful discrimination. *Compton*, 666 S.W.3d at 698 (citing *Flowers*, 139 S. Ct. at 2243).

"We review the record of a *Batson* hearing and the voir dire examination in the light most favorable to the trial court's ruling." *Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). Because the trial court's ruling requires an evaluation of the credibility and demeanor of prosecutors and venire members, and because this evaluation lies "peculiarly within the trial court's province," we defer to the trial court, unless exceptional circumstances exist. *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010); *see also Hernandez*, 500 U.S. at 365 (observing that "the best evidence [on the issue of discriminatory intent] often will be the demeanor of the attorney who exercises the challenge[]"). "'[P]retext' is solely a question of fact[,]" so the trial court is in the best position to make that credibility determination. *See Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). We do not substitute our judgment for the trial court's in deciding whether the prosecutor's explanation was a pretext. *See Nieto*, 365 S.W.3d at 676 (citing *Gibson*, 144 S.W.3d at 534).

Analysis

During voir dire, the State asked the venire whether "[i]t is important to prosecute individuals who commit evading even when the distance traveled is short." The State asked the jurors to answer on a one-to-four scale, where "[o]ne is strongly agree; two is agree; three is disagree; and four is strongly disagree." Jurors 15, 23, 25, and 33 were among the jurors that answered "two." After voir dire, the State

7

exercised its peremptory strikes to remove jurors 15, 23, 25, and 33, among others. Defense counsel objected to the State's use of peremptory strikes to remove jurors 15, 23, 25, and 33, arguing that those jurors had Hispanic surnames like the defendant. The State responded that it struck these jurors based on their responses to the State's scaled question and "without regards to race, gender, or anything." The trial court stated that was "a reasonable reason[]" and overruled the objection.

The next day, before the jury was sworn and seated, the trial court held a hearing on the *Batson* challenge "based on the fact that there were four out of the 10 strikes by the State that were made were individuals with Hispanic surnames[.]" When the trial court asked the prosecutor about the four jurors, counsel for the State told the trial court,

> [T]he State struck Juror No. 15. 15 answered two on our scaled question of one to four. And one being the number we were looking for. And also, 15 had no Texas Driver's license which came back when our investigator ran the criminal history of the panel. . . .
> . . .
> Juror No. 23 also answered a two on our scaled question. We were looking for ones. 23 was also making some faces or mannerisms and did not seem to be happy with [State's counsel] during her presentation of the State's jury selection.
> Juror No. 25 also answered a two on our scaled question. We were looking for ones. 25 also indicated in her questionnaire that she worked for TDCJ. We made the decision to strike her based on her exposure to inmates while in custody.
> And Juror No. 33, Judge, also answered a two on our scaled question when the State was looking for ones. And 33 was on the same row with Juror No. 34 which this Court struck for cause. 34 was the juror, the Court remembers, that brought up the Tennessee cop shooting

8

case.[3] And all the jurors from 31 to 36 on that row seemed to be nodding in agreement and just making mannerisms that did not seem favorable to the State. So we also struck -- the only jurors on that row that were not struck for cause were 33 and 36, and we did end up striking 33 and 36 using State's strikes, Judge.

The trial court asked the State about potential jurors who answered "two" to the scaled question. The State responded that it had struck everyone who answered a "three" or a "four," and because the State still had remaining strikes, it looked at potential jurors who also answered "two," along with their employment history.

At that point, defense counsel asked whether the District Attorney's Office had any "written or unwritten policies regarding finding reasons to strike people of the same ethnic background as the defendant[,]" and the prosecutor responded, "[n]o." Defense counsel also asked whether the State has previously "used this scaling system specifically for strikes, and is it any way calculated towards removing people of ethnic background[.]" The prosecutor responded, "[n]o." The prosecutor also stated that she used her handwritten notes to determine strikes, and her notes did not include the name, race, or ethnicity of the potential jurors.

The trial court then asked whether there was anything more, and both the State and defense replied they had nothing more to offer. The trial court noted on the

---

[3] During voir dire, defense counsel mentioned a case "in Memphis where somebody was stopped and they were brutally beaten[]"and the State asked the venire how they felt about that event. Two potential jurors, Panel members 19 and 34, referred to the case later in their comments.

record that Juror No. 50 was seated on the panel, and that juror had an "obviously []
Hispanic surname [] and appeared to be a Hispanic individual." The trial court then
stated that the State "made reasonable reasons for striking those jurors that they have
noted."

Assuming without deciding that Appellant met his initial burden to show a
prima facie case of discrimination, we cannot say the trial court's ruling was clearly
erroneous. The record shows the State provided a race-neutral explanation for the
strikes, namely the jurors' responses to the State's scaled question about whether it
was important to prosecute individuals who commit evading even when the distance
traveled is short. *See Colone*, 573 S.W.3d at 262-63. As further support, the State
also explained that it considered juror reactions to questions and comments and
employment information in determining its strikes. *See id.* At that point, the burden
of persuasion shifted to Appellant to show that the State's race-neutral explanation
was not genuine but was the product of purposeful discrimination and was only a
sham or pretext. *See id.* at 263; *Watkins*, 245 S.W.3d at 451-52.

Because the record supports the State's race-neutral explanation, and because
the trial court could have reasonably determined that Appellant failed to meet his
burden to show that the facially neutral reason was a pretext or sham, we conclude
that the trial court's ruling denying Appellant's *Batson* challenge was not clearly

erroneous. *See Compton*, 666 S.W.3d at 698; *Colone*, 573 S.W.3d at 263; *Grant*, 325 S.W.3d at 657; *Watkins*, 245 S.W.3d at 451-52. We overrule Appellant's issue.

Having overruled Appellant's sole issue, we affirm the judgment of conviction.

AFFIRMED.

LEANNE JOHNSON
Justice

Submitted on October 23, 2023
Opinion Delivered December 6, 2023
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

11