# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-23-00662-CR

---

**Eric Pettway, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 460TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-DC-22-100131, THE HONORABLE SELENA ALVARENGA, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

Appellant Eric Pettway was convicted of second-degree robbery by a jury and sentenced to seven years' imprisonment by the trial court. Tex. Penal Code §§ 12.33(a), 29.02. In his sole issue, he contends that the trial court erred when it denied his *Batson*[1] challenge. We affirm.

## BACKGROUND

Pettway was indicted with aggravated robbery. *Id.* § 29.03. After voir dire, but before the jury was sworn in, defense counsel raised a *Batson* challenge, challenging the State's use of preemptory strikes against veniremembers 1 and 17. Defense counsel acknowledged that

---

[1] *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that race-based jury strikes deny defendant right to judgment by one's peers).

"17 looked like he'd been out smoking marijuana all night," but stated that "there were only three African-American jurors. The State struck two of them, 1 and 17."

The prosecutor argued that he had a race neutral reason for both strikes. He stated that he struck veniremember 1 because "he did not make eye contact" and "appeared to be nodding off at times," which led the prosecutor to believe "he was not taking the proceeding seriously." Defense counsel argued that other veniremembers had been nodding off during the State's voir dire and stated that the prosecutor's decision not to attempt to interact with veniremembers 1 and 17 "troubled" him. The prosecutor explained that he struck veniremember 17 because "he wasn't paying any attention" and had not completed his juror questionnaire. The trial court confirmed that veniremember 17 had not filled out his questionnaire except for his age and address. The trial court found that the State had a race-neutral reason for striking both veniremembers 1 and 17 and thus, overruled defense counsel's *Batson* challenge. The jury was sworn in by the trial court.

The next day, after the State had called two witnesses, defense counsel moved to amend his *Batson* challenge. He explained that at the time he raised his objection, he mistakenly believed that a third Black veniremember—number 10—was on the jury. He stated that upon seeing the jury that day, he realized veniremember 10 was not there. He requested to amend his challenge "to state the State struck all three black people of the panel, including Number 10, who was engaged." The trial court took up the *Batson* challenge regarding veniremember 10. The trial court took "note that all black members of the panel were stricken by the State." The prosecutor responded that he did not remember veniremember 10 "being African-American" or answering any questions. He stated that he struck veniremember 10 because that prospective juror did not fill out the jury questionnaire. He showed the trial court a copy of the document he

2

used to make his strikes, which only included veniremember 10's age. The trial court noted that veniremember 10 did not respond to the questionnaire, and that it was left "essentially blank" and did "not even indicate their race." The trial court found that the State struck veniremember 10 for a race-neutral reason and denied defense counsel's challenge to veniremember 10. After the ruling, the State clarified that there was an additional veniremember that was African American and not struck by the State to which defense counsel noted that that person was outside the strike zone—meaning that the juror was not going to be sat on the jury without the need of any action from either party.

During the trial the State presented testimonial evidence, including through police detectives, a digital forensic analyst, and the complainant. Kylie Bagby-Daniel testified that Pettway was one of four people who robbed her in her home at gunpoint. The trial court admitted surveillance video depicting Pettway accompanying a codefendant to a pawn shop to sell items that had been reported stolen in the robbery.

After hearing all the evidence, the jury found Pettway not guilty of aggravated robbery but guilty of the lesser-included offense of robbery. The trial court sentenced Pettway to ten years' imprisonment. Pettway filed a motion for new trial for sentencing, which was granted. Pettway was sentenced to seven years' imprisonment. Pettway appealed.

**DISCUSSION**

In his sole issue on appeal, Pettway contends that the trial court erred when it denied his *Batson* challenge, which included objections to the State's use of preemptory strikes against veniremembers 1, 10, and 17.

3

As an initial matter, the State contends that Pettway failed to preserve his challenge to veniremember 10 for our review because it was not timely raised. To be timely, a *Batson* challenge must be raised after the parties deliver their lists of peremptory strikes to the clerk and before the court has impanelled the jury. Tex. Code Crim. Proc. art. 35.261; *Hill v. State*, 827 S.W.2d 860, 864 (Tex. Crim. App. 1992) (explaining that jury is "impanelled" when members of jury have been selected and sworn) To preserve error for appeal a party must make a timely objection stating the grounds for the ruling being sought from the trial court with sufficient specificity to make the trial court aware of that complaint and either obtain a ruling or object to a refusal to rule. Tex. R. App. P. 33.1. For purposes of our analysis, we assume, without deciding, that the objection was timely, and the error was preserved for our review.

We now turn to the merits of Pettway's sole issue: his *Batson* challenge. "[W]hile a prosecutor ordinarily may exercise peremptory strikes for any reason related to his views concerning the outcome of the trial, 'the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race.'" *Grant v. State*, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010) (quoting *Batson v. Kentucky*, 476 U.S. 79, 89 (1986)). A *Batson* challenge to a peremptory strike consists of three steps: (1) the opponent of the strike must establish a prima-facie showing of racial discrimination, (2) the proponent of the strike must articulate a race-neutral explanation, and (3) the trial court must decide whether the party opposing the strike has proved purposeful racial discrimination. *Id.*

Each stage of a *Batson* challenge involves burden shifting. First, a prima facie case of discrimination must be established by the opponent of the strike. *Nieto v. State*, 365 S.W.3d 673, 675–76 (Tex. Crim. App. 2012). If the party opposing the strike makes this initial showing, the burden shifts to the State to produce a facially non-discriminatory reason for

4

its use of the strike. *Id.* at 676. "Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Purkett v. Elem*, 514 U.S. 765, 768 (1995). If the State produces a facially non-discriminatory reason for its strike, the burden shifts back to the opponent of the strike to show that the State's proffered reason is a pretext. *Nieto*, 365 S.W.3d at 676. When reviewing the trial court's resolution of the third step, we must "focus on the genuineness, rather than the reasonableness, of the asserted non-racial motive." *See id.*

In reviewing a trial court's ruling on a *Batson* challenge, we consider the entire record from voir dire and are not limited to the specific arguments made to the trial court by the parties. *See id.* We must review the record in the light most favorable to the trial court's ruling and not disturb the ruling unless it is clearly erroneous. *See Young v. State*, 283 S.W.3d 854, 866 (Tex. Crim. App. 2009). The question of whether the prosecutor's stated reason for striking the veniremember was a pretext is solely a question of fact. *Gibson v. State*, 144 S.W.3d 530, 534 (Tex. Crim. App. 2004). Deference must be given to the trial court's evaluation of the prosecutor's credibility. *Grant*, 325 S.W.3d at 661. Whether the opponent has satisfied his burden of persuasion to show that the State's facially race-neutral explanation for the strike is not genuine but instead pretextual is a question of fact for the trial court to resolve. *Blackman v. State*, 414 S.W.3d 757, 765 (Tex. Crim. App. 2013).

Here, Pettway's issue concerns the third prong of his *Batson* challenge. He contends that the State's proffered reasons for striking the three Black veniremembers that were within the strike zone were all a pretext. He relies on the fact that the State "made no effort to question African American jurors." He asserts that "[i]n order to [e]nsure that there was not some unconscious bias involved, the reason for striking a juror should be decided after there is some, or any, questioning of a juror who might be excluded because of improper standards." For

5

the third step of the *Batson* analysis, courts have used the non-exhaustive set of objective factors laid out in *Keeton v. State* to determine if a prosecutor's reason for a peremptory strike is, in fact, a pretext for racial discrimination. 749 S.W.2d 861, 868 (Tex. Crim. App. 1988); *see also Williams v. State*, 804 S.W.2d 95, 106 (Tex. Crim. App. 1991) (approving use of *Keeton* factors in applying "clearly erroneous" standard of review). These factors are "useful in making a determination that the State's proffered race-neutral reasons are supported by the record, as well as the trial court's findings." *Williams*, 804 S.W.2d at 105–06. The five factors are:

1. The reason given for the peremptory challenge is not related to the facts of the case;

2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

*Id.* at 106.

In his appellate brief, Pettway focuses on the second factor—the lack of questioning directed at the three struck veniremembers. A prosecutor's decision not to address questions directly to a struck juror may be considered as a factor when reviewing the trial court's decision on a *Batson* challenge. *Grant*, 325 S.W.3d at 659–60. However, it is reversible error for an appellate court to give the "lack-of-questioning factor" dispositive weight. *See id.* at 659–61 (reversing court of appeals decision and explaining that "[p]roperly applying the standard of

review, the Court [of Appeals] should have given deference to the trial court's evaluation of the prosecutors' credibility and should not have given dispositive weight to the lack-of-questioning factor"). Thus, we will consider this factor in our review, but to the extent Pettway contends that we should extend the reach of this factor to require prosecutors to ask questions of a veniremember before using a peremptory strike, we decline to do so. *See id.*

The prosecutor's race-neutral reason for striking veniremember 1 was that "he did not make eye contact" and "appeared to be nodding off at times," which led the prosecutor to believe "he was not taking the proceeding seriously." *See Harrell v. State*, 882 S.W.2d 65, 67 (Tex. App.—Houston [14th Dist.] 1994, pet. ref'd) (stating "inattentiveness is a racially neutral reason for exercising a peremptory strike"). Defense counsel did not rebut the State's observations of veniremember 1's demeanor, and thus, the State's description is "considered proved on the record." *Nieto*, 365 S.W.3d at 680. Defense counsel argued that other veniremembers had been nodding off during the State's voir dire. While disparate treatment is one factor that could weigh in support of finding pretext, there is no evidence in the record to support that allegation of disparate treatment nor is it clear whether the other allegedly inattentive veniremembers were also struck or impanelled. And finally, there is no evidence in the record that this juror was struck based on a group trait. Rather, the prosecutor's explanation that the veniremember was falling asleep and not making eye contact with him was specific to the veniremember's behavior. Viewing all the factors in their totality, we conclude that the trial court's determination that striking veniremember 1 was racially neutral was not clearly erroneous. *See id.* (concluding that trial court's determination that State's challenged strike was racially neutral was not clearly erroneous when: prosecutor stated struck veniremember had negative demeanor, State did not attempt to question veniremember on reason for negative

7

demeanor, defense counsel did not rebut State's observation of veniremember's demeanor, and record contained no evidence "that a non-minority venire member had a negative demeanor, but was not struck").

The prosecutor explained that he struck veniremember 17 because "he wasn't paying any attention" and had not completed his juror questionnaire. *See Ester v. State*, 151 S.W.3d 660, 662 (Tex. App.—Waco 2004, no pet.) (concluding that veniremember's failure to answer several questions on juror information card was race-neutral explanation for using peremptory strike). Regarding inattentiveness, the same balancing analysis that we applied regarding veniremember 1 above also applies to veniremember 17 and similarly weighs in favor of the trial court's finding that the State's reasons were not a pretext. Additionally, regarding veniremember 17, defense counsel not only did not rebut the State's observation of inattentiveness, but observed himself that this veniremember "looked like he'd been out smoking marijuana all night."

In regard to veniremember 17's failure to complete the jury questionnaire, the trial court confirmed that veniremember 17 had not filled out his questionnaire except for his age and address. There is no evidence—or assertion—in the record to support that other veniremembers failed to complete their forms and were not struck. Again, there is no evidence in the record that this juror was struck based on a group trait. Viewing all the factors in their totality, we conclude that the trial court's determination that striking veniremember 17 was racially neutral was not clearly erroneous. *See id.* (concluding that trial court's finding of no pretext was not clearly erroneous when reasons given were veniremember's failure to complete juror information card plus demeanor of appearing to not be "very coherent at times" and being slow to react when addressed by prosecutor).

8

Regarding veniremember 10, the prosecutor told the trial court that he struck this potential juror because he did not fill out the jury questionnaire. *See id.* The prosecutor explained that he was "not interested in having folks on the jury who do not respond to the jury questionnaire." He also stated that he did not remember the race of this veniremember. In support, the prosecutor showed the trial court a copy of the document he used to make his strikes, which included only veniremember 10's age and not his race. The trial court confirmed that veniremember 10 did not respond to the jury questionnaire, described it as being "essentially blank," and noted that it did "not even indicate their race." As noted above, there is no evidence of disparate treatment of the African-American members of the venirepanel based on completion level of their jury questionnaires. There is no evidence in the record that this juror was struck based on a group trait. Viewing all the factors in their totality, we conclude that the trial court's determination that striking veniremember 10 was racially neutral was not clearly erroneous. *Jones v. State*, 818 S.W.2d 532, 534-37 (Tex. App.—Houston [1st Dist.] 1991, no pet.) (concluding that trial court did not err when it found that striking veniremember for failure to correctly fill out juror questionnaire was racially neutral and not pretext).

For all three struck venirepersons, Pettway contends that the State did not do enough to demonstrate that its strikes were not based on racial bias and that the trial court should have considered the stated reasons pretextual. However, Pettway had the burden of persuasion under this step. *See Nieto*, 365 S.W.3d at 676. Further, "exceptional circumstances" are required "to warrant the reversal of a trial court's ruling on a *Batson* motion." *Id.* at 680; *cf. Whitsey v. State*, 796 S.W.2d 707, 713, 728 (Tex. Crim. App. 1990) (op. on reh'g) (holding that trial court's finding of no purposeful discrimination was clearly erroneous when record did not support prosecutor's stated reason for striking veniremember and evidence presented by

9

defendant weighed against stated reason). Here, the record supports the State's stated reasons for all three challenged peremptory strikes. Therefore, based on this record we cannot say that the trial court clearly erred in overruling Pettway's *Batson* challenge. We overrule Pettway's sole issue.

## CONCLUSION

We affirm the trial court's judgment of conviction.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   September 26, 2025

Do Not Publish

10